RICHARD G. McCRACKEN, # 2748
SARAH GROSSMAN-SWENSON, # 11979
McCRACKEN, STEMERMAN,
& HOLSBERRY, LLP
1630 South Commerce Street, Suite A-1
Las Vegas, Nevada 89102
PH:    (702) 386-5107
FAX:  (702) 386-9848

*Attorneys for Local Joint*
*Executive Board of Las Vegas;*
*Culinary Workers' Union, Local 226*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS; CULINARY WORKERS' UNION, LOCAL 226, | Case No. 2:12-cv-01963-GMN-CWH |
| Plaintiffs & Petitioners, | |
| vs. | **PETITIONERS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS COUNTERCLAIM AND MOTION TO CONFIRM AND ENFORCE A LABOR ARBITRATION AWARD** |
| RAMPARTS, INC., d/b/a LUXOR HOTEL/CASINO, a Nevada corporation, and Does 1-10, | |
| Defendants & Respondents. | **[Fed. R. Civ. P. 12(b) & 12(c)]** |

## <u>TABLE OF CONTENTS</u>

I.     Introduction.................................................................................................1

II.    Statement of Facts.....................................................................................2

III.   Argument...................................................................................................5

      A.    The Union is entitled to confirmation of the Award.....................................5

      B.    Federal court review of labor arbitration awards is extremely limited and highly deferential.............................................................................................6

      C.    The Arbitrator's award "drew its essence" from the collective bargaining agreement.......................................................................................................8

      D.    The Arbitrator did not exceed the scope of issues submitted to him because all matters of procedure were for the Arbitrator to decide............10

            1.    The Arbitrator made its conclusion regarding the Employer's failure to meet its burden of proof after the close of evidence......................11

            2.    The Arbitrator had the authority to determine that he did not need post-hearing briefs but was willing to accept them...........................12

            3.    Issues related to hearing procedure were properly decided by the Arbitrator.........................................................................................13

      E.    The Award was not procured by undue means..........................................14

      F.    The Award was not the result of "evident partiality.".............................16

      G.    The Employer has not alleged facts showing it was prejudiced as a result of the Arbitrator's alleged misconduct............................................18

      H.    The Employer has not alleged any facts showing that the Arbitrator exceeded his powers or failed to issue a final arbitration award...._...........19

IV.   Conclusion...............................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*A.G. Edwards & Sons, Inc. v. McCollough*,
    967 F.2d 1401 (9th Cir. 1992) ....................................................... 9, 14, 15

*Ass'n of W. Pulp & Paper, Loc. 78 v. Rexam Graphic*,
    221 F. 3d 1085 (9th Cir. 2000) ................................................... 9, 10, 12, 19

*Bhd. of Teamsters v. Silver State Disposal Service*,
    109 F.3d 1409 (9th Cir. 1997) .............................................................. 10, 19

*Coca-Cola Bottling Co. of New York, Inc. v. Soft Drink & Brewery Workers Union*
    *Local 812 Int'l Bhd. of Teamsters*,
    242 F.3d 52 (2d Cir. 2001)........................................................................ 8

*Dreis & Krump Mfg v. Int'l Assoc. of Machinists*,
    802 F.2d 247 (7th Cir. 1986) ..................................................................... 6

*Employers Ins. of Wausau v. National Union Fire Ins. Co.*,
    933 F.2d 1481 (9th Cir.1991) .................................................................. 15

*Fleming v. Pickard*,
    581 F.3d 922 (9th Cir. 2009) ..................................................................... 5

*Goodall-Sanford, Inc. v. United Textile Workers, Local 1802*,
    353 U.S. 550 (1957)................................................................................... 8

*Goss Golden West Sheet Metal, Inc. v. Sheet Metal Workers, Local 104*,
    933 F. 2d 759 (9th Cir. 1991) ................................................... 11, 12, 13, 14

*Hawaii Teamsters & Allied Workers Union, Local 996 v. United Parcel Service*,
    241 F.3d 1177 (9th Cir. 2001) .............................................................. 7, 8

*John Wiley & Sons, Inc. v. Livingston*,
    376 U.S. 543 (1964)........................................................... 10, 11, 12, 13

*Kemner v. Dist. Council of Painting & Allied Trades No. 36*,
    768 F.2d 1115 (9th Cir. 1985) ................................................................... 8

*Kyocera Corp. v. Prudential-Bache T Svcs., Inc.*,
    341 F.3d 987 (9th Cir. 2003) ..................................................................... 7

*Major League Baseball Players Assn. v. Garvey*,
    532 U.S. 504 (2001) ................................................................................ 7

*Nordahl Dev. Corp. Inc. v. Salomon Smith Barney*,
    309 F.Supp.2d 1257 (D. Or. 2004) ...................................... 15, 16, 17, 18

*PaineWebber Group v. Zinsmeyer Trusts Partnership*,
    187 F. 3d 988 (8th Cir. 1999) .......................................................... 14

*Poweragent Inc. v. Elec. Data Sys. Corp.*,
    358 F.3d 1187 (9th Cir. 2004) ......................................................... 8

*San Diego County Dist. Council v. Cory*,
    685 F.2d 1137 (9th Cir. 1982) ......................................................... 8

*Service Employees Int'l Union v. St. Vincent Medical Ctr.*,
    344 F.3d 977 (9th Cir. 2003) ......................................................... 10

*Sheet Metal Workers Int'l Ass'n Local 420 v. Kinney Air Conditioning Co.*,
    756 F.2d 742 (9th Cir.1985) ....................................................*passim*

*Sheet Metal Workers Int'l Ass'n Local No. 359 v. Madison Industries, Inc. of
    Arizona*,
    84 F.3d 1186 (9th Cir. 1996) ....................................................... 5, 6

*Stead Motors v. Automotive Machinists Lodge 1173*,
    886 F.2d 1200 (9th Cir. 1989) ................................................*passim*

*Textile Workers v. Lincoln Mills*,
    353 U.S. 448 (1957) ................................................................... 6

*Toyota of Berkeley v. Automobile Salesmen's Union, Local 1095*,
    834 F.2d 751 (9th Cir.1987), *cert. denied*, 486 U.S. 1043 (1988) ....................... 16, 17

*U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*,
    591 F.3d 1167 (2010) ................................................................ 18

*United Paperworkers Int'l Union v. Misco, Inc.*,
    484 U.S. 29 (1987) .................................................................... 8

*United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*,
    363 U.S. 593 (1960) ................................................................. 5, 9

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960) ................................................................... 6

iv

*Woods v. Saturn Distrib. Corp.*,
  78 F.3d 424 (9th Cir. 1996) ................................................................ 16, 17

**STATUTES**

9 U.S.C. § 10 ............................................................................................ *passim*

29 U.S.C. § 173(d) ........................................................................................ 6

29 U.S.C. § 185(a) ................................................................................... *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P., rule 12(c) ............................................................................ 5

## I.      Introduction

Petitioners Las Vegas Joint Executive Board ("LJEB") and the Culinary Workers' Union, Local 226 ("Culinary Union" or "Union") and Defendant & Respondent Ramparts, Inc., d/b/a the Luxor (the "Employer") are parties to a labor arbitration agreement.  Under that agreement, the parties arbitrated the discharge of grievant Yolanda Hodge, who had been terminated from her job at the Luxor based on allegations of theft.  The parties stipulated that the issue was whether Ms. Hodge was discharged for just cause, and the appropriate remedy, and that the case was properly before the Arbitrator for a final and binding decision.

After the close of evidence, just before the arbitration hearing concluded, the Arbitrator called Employer and Union counsel into an off-the-record meeting.  At that meeting, the Arbitrator informed counsel of his preliminary view of the case: he believed the Employer had failed to meet its burden of proof to show just cause for termination, but that this tentative conclusion did not necessarily mean he would grant full back pay to the grievant.  He explained that he hoped to enter an award on the record immediately so that the unjustly terminated grievant could begin work as soon as possible, with the back pay amount to be decided later.

The Arbitrator stated, however, that he would not make his tentative conclusions final unless both parties had expressly "waived" their "right" to file a brief.  Although no such "right" exists in labor arbitration law or in any agreement between the parties, the Arbitrator was by law free to conduct his arbitration in whatever manner he chose consistent with the collective bargaining agreement.  This Arbitrator's practice was to grant the parties a "right" to file briefs.

Counsel for the Employer said she would not waive the Employer's right to file a brief.  Thus, the Arbitrator said he would keep an open mind and reach a final conclusion only after considering the parties' briefs.

The Employer's counsel added, however, that she believed her client had *already* been denied the right to file a brief.  The Arbitrator rejected that contention, reminding

1

her that he had just *expressly granted* that right—and she had just refused to waive it. The Arbitrator repeated that although he did not believe he *needed* briefing, he would consider the parties' briefs and evidence with an open mind.

The arbitration went back on the record.  At first, counsel for the Employer refused to agree to a briefing schedule, claiming that her summation arguments would be futile because the Arbitrator had already decided the case.  At the end of the hearing, however, counsel for both parties agreed on the record to file briefs by June 1, 2012, and the Arbitrator set that date as the filing deadline.

After considering briefs filed by both parties, and all arguments and evidence, the Arbitrator concluded that Ms. Hodge was not terminated for just cause, and ordered her reinstated with full backpay.  The Employer has refused to comply with the Award.

The Answer filed by the Employer admits all material facts that entitle the Union to confirmation of the Award at issue.  The Employer submitted the case to arbitration, lost, and is trying to get a second bite at the apple by cobbling together a list of disputes its counsel had with the Arbitrator.  But none of the disputes had anything to do with the merits of the case, nor do they show any prejudice toward the Employer.  The Employer makes a series of allegations about "improper procedure" and "bias" and "undue means," but fails to show how any of its allegations resulted in any prejudice to the Employer. The Employer does not state facts showing actual bias against the Employer, and it does not state any facts alleging that the Union used undue means to procure the award.  It does not show how any of its allegations resulted in prejudice or affected the Arbitrator's determination that Ms. Hodge was not terminated for just cause.

The Employer does not – and cannot – allege facts justifying vacating the final and binding labor arbitration award issued in this case.  This Award should be confirmed and enforced.

## II.   Statement of Facts

Petitioners Las Vegas Joint Executive Board ("LJEB") and the Culinary Workers' Union, Local 226 ("Culinary Union" or "Union") are labor organizations that represent

employees at casinos in Las Vegas.  (Ans. ¶¶ 2-3.)  The Employer operates the Luxor hotel and casino.  (Ans. ¶ 4.)  The Employer and the LJEB are parties to and bound by a collective bargaining agreement ("CBA").  (Ans. ¶ 7.)  The CBA governs the manner in which disputes between the Union and the Employer are resolved.  (*Id.* ¶ 8.)

On March 14-16, 2012, the parties held a three-day arbitration hearing ("Hearing") before Arbitrator Thomas Christopher ("Arbitrator") over the termination of Ms. Hodge. (Ans. ¶ 9.)  At the Hearing, the LJEB was represented by the Culinary Union.  (Ans. ¶ 10.)  The parties stipulated that the following issue was properly before the Arbitrator for a final and binding decision: "Was the grievant, Yulanda Hodge, discharged for just cause?  If not, what is the appropriate remedy?"  (Ans. ¶ 11.)

The parties filed briefs on June 20, 2012.  (Counterclaim ¶ 20 & Exh. 2, p. 2.)  On or about September 14, 2012, the Arbitrator issued an Award in which he found that the Ms. Hodge's termination was not for just cause.  (Ans. ¶ 12.)  The Award ordered that Ms. Hodge be reinstated with backpay to her former position without loss of seniority and other contract rights.  (*Ibid.*)  To date, the Employer has not complied with the Award and has not reinstated Ms. Hodge.  (Ans. ¶ 14.)

The Employer further alleges in its Counterclaim that prior to the Hearing, Union counsel contacted the Arbitrator regarding dates of availability.  (Counterclaim ¶ 4.) Employer counsel expressed that she felt Union counsel had acted inappropriately in inquiring about available dates *ex parte*, but Employer counsel agreed to schedule a hearing with the Arbitrator and proceed with a hearing on the merits.  (*Ibid.*)

In the parties' CBA, written briefing is not part of the arbitration procedure. (Compl., Exh. A, pp. 52-53 & Ans. ¶ 8 (admitting Exh. A to the Complaint is true and correct copy of Article 21 of the CBA).)  Nevertheless, the Employer alleges that the parties have submitted a number of disputes to arbitration, and that the parties "always"

3

submit post-hearing briefs except where they modify this practice by mutual agreement. (Counterclaim ¶ 5.)[1]

On the first day of the three-day arbitration Hearing, the Arbitrator disclosed that he had done work with the parties for more than 30 years in Las Vegas. (Counterclaim ¶6.) He informed the parties that he might (if he so chose) decide the case when the evidence closed, without the benefit of briefs.[2] (Counterclaim ¶ 6.) The Employer did not respond by objecting in any way. (*See id.*)[3]

The Employer alleges that the Hearing proceeded in an irregular manner, including allowing counsel for the Union to interject on direct and instructing on how to *voir dire* a witness, and alleges that the Arbitrator made findings of fact before close of evidence. (Counterclaim ¶ 7.) However, the Employer also alleges that the only statements the Arbitrator made about findings of fact occurred after close of evidence. (*Id.* ¶ 14(a).)

The Employer further alleges that the Arbitrator stated that he intended to rule on the matter, that counsel for the Employer objected that it should get to argue the case, that the Arbitrator ignored the objection and "ruled" in favor of the Union, and then tried to get the counsel for the Employer to agree to file a brief. (Counterclaim ¶¶ 9-13.)

After going back on the record, the Arbitrator confirmed on the record that he had asked for an informal meeting with counsel at the close of evidence, at which he stated that he had preliminarily found that the Employer had failed to meet its burden of proof.

[1] Although the Employer's allegations are taken as true for purposes of a 12(b) motion, the Union strenuously rejects the Employer's allegations, which are false, incomplete, and rife with misleading omissions. For example, even if the allegation that the parties "always" filed post-hearing briefs were true, it is irrelevant here. The Arbitrator expressly granted the parties a right to file briefs. Indeed, the parties filed briefs, and the Arbitrator issued his decision based on those briefs. (See Counterclaim, Exh. 2, p. 2.)

[2] According to the transcript excerpt, the Arbitrator stated that he might decide the case after the Union finished putting on its evidence. (Counterclaim ¶ 6.) Employers generally go first in discharge cases, so the Union is the last party to put on evidence.

[3] In any event, as the Employer concedes, the Arbitration did *not* follow the no-brief procedure. Each party filed a brief. (Counterclaim, Exh. 2, p. 2.)

4

(Counterclaim ¶ 14(a).)  The Arbitrator stated that he did not need a brief to decide the case (*Id.*¶14(b)), but that if a party wanted to file a brief, it had the right to file a brief. (*Id.* ¶14(c).)He explained that an arbitrator could also tell the parties in an advisory role that he did not need a brief.  (*Id.*¶ 14(c).)

The Arbitrator ordered that briefs be submitted by June 1, 2012.  (Counterclaim ¶ 15.)  After requesting permission to file a brief, Counsel for the Employer at first refused to agree to file a brief.  (*Ibid*.)  After the Arbitrator granted the Employer's request for an extension of the briefing schedule, the parties filed briefs by June 20, 2012. (Counterclaim ¶ 20 & Exh. 2, p. 2.)

The Employer alleges that off-the-record comments were made after the Hearing about "something about a group hug."  (*Id.*¶ 16.)  Employer counsel avers that the Arbitrator hugged counsel and said "that is what happens when you get an Albanian and Latina in the same room together," and alleges that the Arbitrator did not hug counsel for the Union.  (*Ibid.*)

Two months after the hearing concluded, the Employer moved for recusal/ withdrawal of the Arbitrator.  (Counterclaim ¶ 17.)  The Arbitrator denied the Motion. (*Id.*¶ 18.)  The Arbitrator issued an award on September 14, 2012, and issued an Opinion with a clarified Award on November 26, 2012.  (*Id.* ¶¶ 19-20.)

III.   **Argument**

A.     **The Union is entitled to confirmation of the Award.**

The Union brings this motion for judgment on the pleadings pursuant to Rule 12(c). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law."  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), "authorizes district courts to enforce or vacate an arbitration award entered pursuant to a collective bargaining agreement."  *Sheet Metal Workers Int'l Ass'n Local No. 359 v. Madison Industries, Inc. of Arizona*, 84 F.3d 1186, 1190 (9th Cir. 1996); *see also United Steelworkers of Am. v. Enterprise Wheel & Car*

*Corp.*, 363 U.S. 593, 596 (1960) (enforcing labor arbitration award and explaining that "[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements").

Here, the Employer admitted all of the material factual allegations in the Petition. The Employer admits that it entered into a collective bargaining agreement containing an agreement to arbitrate disputes, that an arbitration hearing was held pursuant to that arbitration provision in the collective bargaining agreement, and that the arbitrator issued the award at issue in this case.  (Ans. ¶¶ 8-9, 11-12.)  The Employer may only vacate the award for very specific and limited reasons.  Because, as described below, it is evident from the face of the pleading that the Employer's Counterclaim and affirmative defenses do not state a claim for any of these reasons, the award should be confirmed.

**B.      Federal court review of labor arbitration awards is extremely limited and highly deferential.**

Suits for breach of labor agreements are governed by Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).  Section 301 creates a body of substantive federal common law promoting labor arbitration.  *See Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451-459 (1957); 29 U.S.C. § 173(d) (declaring LMRA policy favoring arbitration to resolve industrial disputes).  Courts give extreme deference to labor arbitration awards.  "[J]udicial review of an arbitration award is both limited and highly deferential."  *Madison Industries*, 84 F.3d at 1190; *Stead Motors v. Automotive Machinists Lodge 1173*, 886 F.2d 1200, 1205 (9th Cir. 1989) (describing the "nearly unparalleled degree of deference" given to labor arbitrators' decisions).

This deference is particularly apt in the context of labor arbitrations, because such arbitrations advance the goal of industrial stabilization.  *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960).  An employer that has agreed to arbitrate disputes "will not be permitted to nullify the advantages to the union by spinning out the arbitral process unconscionably through the filing of meritless suits and appeals."  *Dreis & Krump Mfg v. Int'l Assoc. of Machinists*, 802 F.2d 247, 255 (7th Cir. 1986).

The Supreme Court has repeatedly held that when a collective bargaining agreement can be read in a manner consistent with the arbitrator's interpretation, courts cannot second-guess arbitrators. *Major League Baseball Players Assn. v. Garvey*, 532 U.S. 504, 509-10 (2001) ("courts . . . have no business weighing the merits of the grievance [or] considering whether there is equity in a particular claim.") (*quoting United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 39 (1987) and *United Steelworkers of Am. v. American Mfg. Co.*, 363 U.S. 564, 568 (1960)).

In conducting this limited review, a court has no power to correct erroneous factual findings or legal errors. *Stead Motors*, 886 F.2d at 1209; *Kyocera Corp. v. Prudential-Bache T Svcs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003); *Hawaii Teamsters & Allied Workers Union, Local 996 v. United Parcel Service*, 241 F.3d 1177, 1178 (9th Cir. 2001) ("We emphasize that our task is to determine *whether* the arbitrator interpreted the collective bargaining agreement, *not* whether he did so correctly.").

Here, the Arbitrator was asked to determine whether there was just cause for the termination of the Grievant. After hearing all evidence, the Arbitrator determined that the Employer had not proved that there was just cause for the Grievant's termination. (*See* Counterclaim, Exh. 2.) This award should be enforced.

The Employer has answered with "affirmative defenses" and a counterclaim to vacate the award. It is the Employer's burden to show grounds to vacate the award. *See Sheet Metal Workers Int'l Ass'n Local 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 745 (9th Cir.1985). As we explain below, the Employer fails to allege facts sufficient to show that the award fails to "draw its essence" from the CBA.

The Employer's other grounds mimic reasons for *vacatur* found in the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"). The Union will address these grounds and demonstrate they lack merit even if the FAA applied in this case. It is important to note, however, that it does not apply of its own force. Only § 301 of the LMRA empowers the federal courts to hear "[s]uits for violation of contracts between an employer and a labor organization," including suits to vacate or confirm labor arbitration

awards.  29 U.S.C. § 185; *Goodall-Sanford, Inc. v. United Textile Workers, Local 1802*, 353 U.S. 550, 551 (1957) (cases under the FAA were inapposite because "[t]he right enforced here is one arising under § 301(a)"); *Poweragent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004) ("[I]n this circuit CBAs have been held to be outside the coverage of the Federal Arbitration Act ('FAA')."); *Kemner v. Dist. Council of Painting & Allied Trades No. 36*, 768 F.2d 1115, 1118 n.1 (9th Cir. 1985) (FAA does not provide jurisdiction in suit to vacate labor arbitration award governed by Section 301); *San Diego County Dist. Council v. Cory*, 685 F.2d 1137, 1141-42 (9th Cir. 1982) (FAA rule on statute of limitations for motion to vacate does not apply in Section 301 suits to vacate labor arbitration award); *Coca-Cola Bottling Co. of New York, Inc. v. Soft Drink & Brewery Workers Union Local 812 Int'l Bhd. of Teamsters*, 242 F.3d 52, 55 (2d Cir. 2001) ("Given the difference in eras and the intervening revolution in labor policy, adherence to the FAA in Section 301 cases may lead to anomalous or even bizarre results.").

The Supreme Court has recognized that in creating a federal "common law" governing Section 301 suits, courts may be guided by precedent under the FAA.  *Misco*, 484 U.S. at 41 (while the FAA does not apply to suits over labor contracts, "the federal courts have often looked to the Act for guidance in labor arbitration cases"); *Coca-Cola Bottling Co.*, 242 F.3d at 54 ("It may be, of course, that the body of law developed under Section 301 will at times draw upon provisions of the FAA, but by way of guidance alone.").

C.      **The Arbitrator's award "drew its essence" from the collective bargaining agreement.**

The Employer argues that the Arbitrator's Award "does not draw its essence" from the CBA and that the Arbitrator "dispensed his own brand of industrial justice." (Counterclaim ¶ 32; 6th Affirm. Def.)  The Ninth Circuit has explained that a party cannot obtain judicial review of an arbitration award merely by merely invoking these two vague phrases.  *See Hawaii Teamsters*, 241 F.3d at 1183 ("we must take care… not

to allow these two 'cryptic phrases' to open a back door to judicial review of the merits of an arbitral award."); *Stead Motors*, 886 F.2d at 1208 n.8.

"Although well-established labor law provides that an arbitration award must draw its essence from the CBA, that means only that the arbitrator's determination must be a 'plausible interpretation' of the CBA." *Ass'n of W. Pulp & Paper, Loc. 78 v. Rexam Graphic*, 221 F. 3d 1085, 1090-91 (9th Cir. 2000) (internal citations omitted).[4]  A contract "fails to draw its essence" only in "those egregious cases in which a court determines that the arbitrator's award ignored the plain language of the contract, that he 'manifestly disregarded' the contours of the bargain expressed in outline by the collective bargaining agreement." *Stead Motors*, 886 F.2d at 1206 n.6.

The Ninth Circuit has repeatedly held that an arbitrator may rely on industrial common law in interpreting a collective bargaining agreement. An arbitrator's award "does not violate the 'essence of the CBA' even if it goes beyond precedent or the record before her." *Rexam Graphic*, 221 F.3d at 1091 (internal citations omitted).

Here, the stipulated issue was whether there was just cause for Ms. Hodge's termination from the Luxor, and the Arbitrator found that there was no just cause.  (Ans. ¶ 11.)  As the Arbitrator explained in his Opinion, the evidence provided by the Employer did not prove that Ms. Hodge had stolen money.  (Counterclaim, Exh. 2, p. 8.)  It was equally plausible that she had not stolen money.  (*Id.*)  Because the Employer had the burden of proving just cause, the termination was not for just cause.  (*Id.*)

The Employer does not allege how the Arbitrator's Award supposedly fails to draw its essence from the collective bargaining agreement, nor how *any* of the Employer's counterclaims show that the Arbitrator's award was prejudiced.  The Arbitrator's Opinion shows that he considered the issue of just cause and made a reasonable determination according to the evidence and arguments before him—

---

[4] Arbitrators are not required to state the reasons for their decisions; they are presumed to have relied on permissible grounds. *See A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992) (per curiam), *cert. denied*, 506 U.S. 1050 (1993); *Enterprise Wheel*, 363 U.S. at 598.

including the Employer's brief and evidence.  (Counterclaim, Exh. 2, p.2.)  His interpretation of "just cause" in the CBA is a plausible interpretation of the CBA and therefore draws its essence from the CBA.  *Stead Motors*, 886 F.2d at 1206 n.6.

The Employer also asserts that the Arbitrator exceeded his authority in making an order about payment of his bill.  But the Arbitrator had the power to determine the scope of issues before him.  An arbitrator's "interpretation of the scope of the issues submitted to him is entitled to broad deference."  *Rexam Graphic*, 221 F.3d at 1089.  Moreover, under the law of the Ninth Circuit, an arbitrator may clarify or amend an award without additional permission from the parties: "To hold that a joint request is required before an arbitrator may clarify or complete an award would empower a party that would benefit from an error to prevent its correction."  *Bhd. of Teamsters v. Silver State Disposal Service*, 109 F.3d 1409, 1412 (9th Cir. 1997).

The CBA provides that the losing party in a discharge arbitration will pay the Arbitrator's fee.  (Compl., Exh. A, p. 63, art. 21.03(c).)  Thus, the Arbitrator's amended order regarding payment for his services was well within the scope of issues submitted to him, and he was permitted to clarify this without permission from the Employer.  *See Rexam Graphic*, 221 F.3d at 1089; *Silver State Disposal*, 109 F.3d at 1412.

    **D.**    **The Arbitrator did not exceed the scope of issues submitted to him because all matters of procedure were for the Arbitrator to decide.**

The Supreme Court has long held that once it is settled that parties are obligated to arbitrate a dispute, all matters of procedure are for the arbitrator to decide.  *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 577-79 (1964); *see also Service Employees Int'l Union v. St. Vincent Medical Ctr.*, 344 F.3d 977 (9th Cir. 2003).

An arbitrator does not exceed the scope of issues submitted by addressing and deciding procedural issues related to the arbitration.  The Ninth Circuit has repeatedly held that where a party to an arbitration asserts procedural matters tangential to the main body of the arbitral dispute, those issue become part of the bundle of issues to be decided by the arbitrator.  *Kinney*, 756 F.2d at 744-45; *Goss Golden West Sheet Metal, Inc. v.*

*Sheet Metal Workers, Local 104*, 933 F. 2d 759, 763-64 (9th Cir. 1991).  A "mere procedural irregularity provides no basis upon which to conclude" that an arbitrator "acted beyond its authority."  *Kinney*, 756 F.2d at 744-45.

The Employer makes a series of allegations in its Counterclaim about the Arbitrator altering the parties' "regular" arbitration procedure.  (Counterclaim ¶ 4; 4th Affirm. Def.)  These arguments are foreclosed by the *John Wiley* line of cases.

The parties stipulated to the issue of whether there was "just cause" for the Grievant's discharge was properly before the Arbitrator for a final and binding decision. (Ans. ¶ 11.)  The Employer then alleges that the Arbitrator violated the parties' "regular" arbitration procedure for the following reasons: stating at the beginning of the hearing that he might decide the case after the evidence was closed; allowing union counsel to ask questions on direct; giving instructions to union counsel about *voir dire*; making findings of fact after close of evidence; holding a meeting with counsel after evidence was closed; and setting a briefing schedule without counsel for the Employer agreeing to the schedule.  (Counterclaim, ¶¶ 5, 6, 7, 9-15.)  These are all procedural matters well within the authority of the Arbitrator.

1.    **The Arbitrator made its conclusion regarding the Employer's failure to meet its burden of proof after the close of evidence.**

The Employer takes issue with the fact that the Arbitrator gave his tentative view of the case after close of evidence.  (Counterclaim ¶ 14(a).)[5]  Specifically, the Arbitrator stated his tentative view that the Employer had not met its burden of proof in showing that there was just cause for terminating the grievant.[6]  (*See id.* ¶¶ 6 & 14.)  The

---

[5] The Arbitrator had suggested at the beginning of the hearing that he might issue a final award without briefing if the evidence was clear.  (Counterclaim ¶ 6.)  The Employer did not object to this suggestion.  (*Ibid.*)  Additionally, the Arbitrator did not issue a final award without briefing.  Instead, he affirmatively extended the right to file briefs, and the both parties filed briefs in the matter. (Counterclaim ¶ 20 & Exh. 2, p. 2.)

[6] It is well-established that the employer bears the burden of proving just cause in a termination or other discipline case.  *See* ADOLPH M. KOVEN & SUSAN L. SMITH, JUST

11

Arbitrator clarified that both parties had a "right" to brief the case, but that he could tell the parties in an advisory way that he did not need a brief. (*Id.* ¶ 14(c).) Counsel for the Employer refused to waive her client's "right" to file a brief. Thus, the Arbitrator accepted briefs from both sides and considered all briefing, arguments, and evidence before rendering his decision.[7] (Counterclaim, ¶¶ 14-15 & Exh. 2, p. 2.)

The Employer does not attempt to explain how any of the Arbitrator's conclusions as described in his Opinion were affected by the supposedly "irregular" arbitration procedure. (*See* Counterclaim, ¶ 20 & Exh. 2.) The Employer does not allege any prejudice other than the bare assertion that it lost the case. The facts alleged by the Employer do not show that the Employer exceeded the scope of issues presented nor engaged in any arbitral misconduct.

> **2. The Arbitrator had the authority to determine that he did not need post-hearing briefs but was willing to accept them.**

The parties' CBA does not require submission of written briefs. (Compl., Exh. A, pp. 51-53.)[8] The CBA also does not address whether Arbitrators may share their tentative views on the case after close of evidence. (*Ibid.*) Under the CBA and well-established case law, *only the Arbitrator* had the authority to determine the proper arbitral procedures. *See John Wiley*, 376 U.S. at 557; *Goss*, 933 F.3d at 763. In this case, after the close of evidence, the Arbitrator decided to give a tentative opinion and to grant both parties the right to file post-hearing briefs. (*See* Counterclaim ¶ 14.) Under well established law, this was properly the Arbitrator's role.

---

CAUSE: THE SEVEN TESTS, 3d ed., at 278 (2006); *Rexam Graphic*, 221 F. 3d at 1091 (citing JUST CAUSE: THE SEVEN TESTS as authority on industrial common law).

[7] The Arbitrator explicitly states that he considered all facts and arguments presented in the briefs submitted by both parties on June 20, 2012. (*See* Counterclaim, Exh. 2, p.2.) An arbitrator's factual conclusions are entitled to great deference, and this conclusion about considering the argument in the briefs should be given deference. *See Stead Motors*, 886 F.2d at 1209.

[8] While the CBA states that the parties will use members of the National Academy of Arbitrators, it does not state that parties will follow NAA procedures. (See Compl., Exh. A, p. 52, art. 21.03(c).)

The procedures chosen by the Arbitrator were well within his scope of authority. The Arbitrator shared with counsel for both parties his tentative opinion that the Employer had not met its burden of proof, and extended to both parties the right to file briefs. (Counterclaim ¶14(a).) After the Employer's counsel asserted that she wanted to file a brief, the Employer then alleges that the Arbitrator set a briefing schedule "without Counter-Claimant agreeing to file a brief." (Counterclaim ¶¶ 14(b)-(c) & 15.) But this suggestion that the Employer had to "agree" to file a brief is incorrect as a matter of law: because the Employer submitted to the Arbitrator's jurisdiction pursuant to the CBA, it also submitted to the Arbitrator's jurisdiction to decide procedural issues. (*See* Ans. ¶ 11; Compl., Exh. A; *John Wiley*, 376 U.S. at 557; *Goss*, 933 F.3d at 763.) It was well within the Arbitrator's jurisdiction to set a briefing schedule.

The Employer did in fact file a brief, which the Arbitrator considered. (Counterclaim, ¶ 20 & Exh. 2, p. 2.) The Arbitrator did not act outside the scope of his authority when he expressed his views at the close of evidence and invited, accepted, and analyzed both parties' post-hearing briefs before issuing an award. (*See id.*; *see John Wiley*, 376 U.S. at 557.)

### 3.     Issues related to hearing procedure were properly decided by the Arbitrator.

Finally, the Employer alleges that the Arbitrator allowed Union counsel to ask questions on direct and gave instructions to Union counsel about the Arbitrator's *voir dire* procedure. The Employer does not explain what these questions or instructions were, nor make any allegations that doing so resulted in any prejudice to the Employer. Even if these decisions were irregular, a "mere procedural irregularity provides no basis upon which to conclude" that the Arbitrator "acted beyond [his] authority." *Goss*, 933 F.2d at 763-64. The Employer's objections to procedural decisions made by the Arbitrator were matters for the Arbitrator to decide. Even if these vague allegations about instructions and questions rose to the level of "procedural irregularity," this does

13

not support the argument that the Arbitrator acted beyond his authority, and does not support vacating the Award.  *See id.*

>    **E.      The Award was not procured by undue means.**

The FAA allows for vacation of an award "procured by corruption, fraud, or undue means."  9 U.S.C. § 10(a)(1).  The Ninth Circuit has held that undue means "clearly connotes behavior that is immoral if not illegal."  *A.G. Edwards*, 967 F.2d at 1403-04 ("sloppy or overzealous lawyering" does not constitute undue means).  "Consistent with the plain meaning of fraud and corruption, and with the limited scope of judicial review of arbitration awards, other circuits have uniformly construed the term undue means as requiring proof of intentional misconduct."  *PaineWebber Group v. Zinsmeyer Trusts Partnership*, 187 F. 3d 988 (8th Cir. 1999).

For a party to obtain *vacatur* of a labor arbitration award for "undue means," the party seeking *vacatur* must show that the undue means was: "(1) not discoverable upon the exercise of due diligence prior to the arbitration, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence."  *A.G. Edwards*, 967 F.2d at 1404.  The Ninth Circuit has held that the FAA "requires a showing that the undue means *caused* the award to be given."  *Id.* at 1403 (emphasis added).

Here, repeating the words of 9 U.S.C. § 10(a)(1) but not invoking that statute, the Employer makes the serious charge that the Award "was procured by undue means," without identifying any facts supporting its contention.  (Counterclaim ¶ 27; 1st Affirm. Def.)  The Employer's use of the passive tense is telling: the Employer does not state who procured the Award by undue means, what those undue means were, and how the Award was procured, much less show that the undue means were not discoverable, were materially related to an issue in the arbitration, and were established by clear and convincing evidence.

The Employer makes one allegation about the actions of the Union and Union counsel: that Union counsel had an *ex parte* contact with the Arbitrator *before* the Hearing regarding *hearing dates*.  (Counterclaim, ¶ 4.)  But such an *ex parte* contact

14

regarding scheduling is simply a routine part of scheduling arbitrations, and certainly is not illegal or immoral behavior.

And the Employer's reaction to this *ex parte* contact shows that no prejudice resulted from it.  The Employer alleges that it was aware of the contact, and it nevertheless voluntarily agreed to proceed to arbitration anyway, stipulating at the Hearing that the grievance was properly before the Arbitrator for a final and binding decision.  (Counterclaim ¶ 4; Ans. ¶ 11.)[9]

Additionally, the Ninth Circuit has warned that "where the fraud or undue means is not only discoverable, but discovered and brought to the attention of the arbitrators, a disappointed party will not be given a second bite at the apple. This rule is consistent with 'the extremely narrow scope of our review of the arbitration panel's decision.'"  *A.G. Edwards*, 967 F.2d at 1404 (*citing Employers Ins. of Wausau v. National Union Fire Ins. Co.,* 933 F.2d 1481, 1485 (9th Cir.1991)).

The Employer is not entitled to a second bite at litigating this *ex parte* apple.  *See A.G. Edwards*, 967 F.2d at 1404.  The Employer does not allege that there were any further *ex parte* conversations—or, indeed, any *ex parte* conversations at all relevant to the merits of the arbitration.  (Counterclaim ¶ 4.)  The Employer has not alleged that any prejudice resulted from the *ex parte* contact, nor that such contact somehow *caused* the Employer to lose the arbitration.  *See Employers Ins.*, 933 F.2d at 1490 (*vacatur* inappropriate where party failed to show prejudice from *ex parte* contact).  Therefore, even if the FAA applied to this case or the Court chose to adopt by analogy the "undue means" reason to vacate a labor arbitration award, the Employer has not and cannot allege any facts showing how the *ex parte* contact to procure hearing dates could have constituted undue means.  Nor can it allege any other facts showing undue means.

---

[9] Indeed, the Employer also fails to explain how an *ex parte* procurement of scheduling availability is in any way relevant to the merits of the Award (let alone somehow prejudicial to those merits).  *See also Nordahl*, 309 F.Supp.2d at 1266 ("[E]vidence giving rise to *the appearance* of impropriety *is not* sufficient to establish evident partiality.") (emphasis added).

**F.      The Award was not the result of "evident partiality."**

The FAA also permits *vacatur* of arbitration awards for "evident partiality or corruption in the arbitrators."  9 U.S.C. § 10(a)(2).  Under the FAA, "[t]he Ninth Circuit has identified two categories of evident partiality cases: non-disclosure cases and actual bias cases."  *Nordahl Dev. Corp. Inc. v. Salomon Smith Barney*, 309 F.Supp.2d 1257, 1266 (D. Or. 2004) (*citing Woods v. Saturn Distrib. Corp.*, 78 F.3d 424, 427 (9th Cir. 1996)).  "In nondisclosure cases, *vacatur* is appropriate where the arbitrator's failure to disclose information gives the impression of bias in favor of one party."  *Woods*, 78 F.3d at 427. [10]

This is not a failure to disclose case.  Where a party does not seek to vacate an arbitration award based on the Arbitrator's failure to disclose information, the party must show the arbitrator was *actually biased* against the complaining party.  *Nordahl*, 309 F.Supp.2d at 1266.  Here, the Employer does not allege that the Arbitrator failed to disclose any relevant relationship with the Union or failed to disclose a conflict of interest.[11]  *See Woods*, 78 F.3d at 428 (if objection is not directed at nondisclosure of relevant information, it is essentially an attack on the integrity of the arbitration award and the legal standard for determining "actual bias" applies).  Thus, this is an "actual bias" case.

In "actual bias" cases like this one, "evidence giving rise to the appearance of impropriety *is not* sufficient to establish evident partiality."  *Nordahl*, 309 F.Supp.2d at 1266 (emphasis added); *Toyota of Berkeley v. Automobile Salesmen's Union, Local 1095*, 834 F.2d 751, 755 (9th Cir.1987), *cert. denied*, 486 U.S. 1043 (1988) ("the appearance of impropriety, standing alone, is insufficient to establish [actual] bias"); *Kinney*, 756 F.2d

---

[10] In nondisclosure cases, courts may vacate awards when an arbitrator failed to disclose a relationship with a party to the arbitration or a financial interest in the outcome of the arbitration.  *Toyota of Berkeley*, 834 F.2d at 756.

[11] The only allegation made about disclosures is the Arbitrator's disclosure, prior to commencement of the Hearing, that he had worked with the parties for many years.  (Counterclaim ¶ 6.)  There are no allegations made about failure to disclose information.  (*See id.*)

at 746. Instead, "the burden of proving specific facts indicating improper motives rests on the party challenging the arbitration award." *Toyota of Berkeley*, 834 F.2d at 755; *Kinney*, 756 F.2d at 745.

The Employer has not stated allegations sufficient to show that the Arbitrator was "predisposed to favor" the Union.  *See Nordahl*, 309 F.Supp.2d at 1268; *Woods*, 78 F.3d at 429.  Although the Employer has made assertions about procedural irregularities as described in Part D, *supra*, such assertions do not support claims of evident partiality: "Even repeated rulings against one party to the arbitration will not establish bias absent some evidence of improper motivation."  *Kinney*, 756 F.2d at 746.

Likewise, the Arbitrator's statement of his tentative conclusions at the close of evidence does not demonstrate *partiality* for the Union.  They were his conclusions after hearing the Employer's evidence—its "best foot forward" was not enough to convince him.  Moreover, those conclusions were tentative and subject to change.  The Arbitrator's letter and Opinion states that he considered not only the evidence, but also the arguments made in both parties' post-hearing briefs.  (Counterclaim, Exhs. 1 & 2, p. 2.)  Given the highly deferential review given to labor arbitration awards, this is a completely satisfactory explanation for the procedure employed by the Arbitrator.

The Employer also alleges that after the hearing, Union's counsel said "something about a group hug." (Counterclaim ¶ 16.)  The Arbitrator allegedly hugged counsel for the Employer and said "That is what happens when you get an Albanian and a Latina in the same room together."  (*Id.*)  The Arbitrator did not hug counsel for the Union.  (*Id.*)

Even if the Employer's allegations about the Arbitrator's hug and comment are true, they do not show actual bias *against* the Employer.  The alleged comments do not tend to show whether the Arbitrator was favoring or disfavoring Employer's counsel. They do not tend to show whether the Arbitrator was actually biased against the Employer regarding the merits (*i.e.*, whether the Employer terminated Ms. Hodge for just cause).  And they do not tend to show that the Arbitrator was corrupt.  Therefore, even if, as alleged, the comments could have created an "appearance of impropriety," the facts

alleged in the Employer's counterclaim are "*not* sufficient to establish evident partiality." *See Nordahl*, 309 F.Supp.2d at 1266 (emphasis added).  The hug and comment appear most likely an attempt by the Arbitrator to dispel the tension that characterized the hearing.  Even if the FAA applied here, the Employer has not shown evident partiality by the Arbitrator.

> **G.     The Employer has not alleged facts showing it was prejudiced as a result of the Arbitrator's alleged misconduct.**

The FAA allows for *vacatur* where arbitrators "were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced."  9 U.S.C. § 10(a)(3).  To meet this test, the Employer must show causation: that it was prejudiced *as a result of* the Arbitrator's misconduct.  (*See* 3rd Affirm. Def.)  The Ninth Circuit recently has held that under the FAA, *ex parte* conduct constitutes "misbehavior" only if the conduct "prejudices the rights of a party."  *See U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1176 (2010).  The Ninth Circuit explained that prejudice existed where, for example, an arbitrator misled a party into believing that evidence had been admitted, but then ruled against the party for failing to present evidence on the very point to which the excluded evidence was central.  *See id.* at 1175.

The Employer does not make any allegations about ways in which the Employer was prejudiced by the Arbitrator's alleged misconduct.  As described in Part E *supra*, Union counsel's *ex parte* contact with the Arbitrator regarding scheduling did not prejudice the Employer.  The Employer does not describe how any of the Arbitrator's other allegedly "irregular" actions impacted the Award.  (*See* Counterclaim ¶ 6.) Because the Employer has not alleged that it was prejudiced by any of the Arbitrator's actions, it cannot show it is entitled to *vacatur* under 9 U.S.C. § 10(a)(3).

**H.     The Employer has not alleged any facts showing that the Arbitrator exceeded his powers or failed to issue a final arbitration award.**

The FAA also provides for *vacatur* "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  This part of the FAA is probably one that could not be applied to a labor arbitration award even by adoption, as it may establish a standard for review in conflict with that prescribed under Section 301 (that "an arbitration award must draw its essence from the CBA," *Rexam Graphic*, 221 F. 3d at 1090-91).  The Court need not resolve this question, however, because the Arbitrator did not imperfectly execute his powers "such that a mutual, final, and definite award upon the subject matter submitted was not made."  (*See* Counterclaim ¶ 31; 5th Affirm. Def.)  The Arbitrator had the authority to set up a briefing deadline as part of the bundle of procedural issues submitted to him during the arbitration, despite the Employer's alleged refusal to commit to the briefing deadline at the hearing.  *See Kinney*, 756 F.2d at 744-45.  To hold otherwise would allow a party to impermissibly and unilaterally delay resolution of disputes submitted to arbitration.[12]

**IV.    Conclusion**

The Employer's Counterclaim is without merit.  The parties agreed to arbitrate the termination of Ms. Hodge, stipulated that the case was properly before the Arbitrator for a final and binding decision, and the Arbitrator issued an Award in favor of the Union.  It is evident from the face of the Counterclaim that the Employer has not and cannot make any allegations showing that it was prejudiced by any alleged bias, undue influence, or misbehavior on the part of the Arbitrator or Union.  Thus, the Employer's Counterclaim does not state a claim upon which relief may be granted.

---

[12] As described in Part D, *supra*, the Arbitrator also had the authority to correct and clarify the Award.  *See Silver State*, 109 F.3d at 1412.  A joint request or mutual consent to correct the award is not necessary.  *See id.*

19

The Union's motion to dismiss should be granted, and its motion to confirm and enforce the Award should be granted.

Dated: December 28, 2012                    RESPECTFULLY SUBMITTED,

                                            **McCRACKEN, STEMERMAN,
                                            & HOLSBERRY, LLP**

                                            /s/ *Sarah Grossman-Swenson*
                                            SARAH GROSSMAN-SWENSON
                                            RICHARD G. McCRACKEN

                                            *Attorneys for Petitioners Local Joint Executive
                                            Board of Las Vegas* and *Culinary Workers'
                                            Union, Local 226*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I am an employee of McCracken, Stemerman & Holsberry and that on this 2nd day of January, 2013, I caused to be served a true and correct copy of the above and foregoing:

**PETITIONERS' MEMORANDUM OF POINTS AND AUTHORITIES IN**

**SUPPORT OF ITS MOTION TO DISMISS COUNTERCLAIM AND MOTION**

**TO CONFIRM AND ENFORCE A LABOR ARBITRATION AWARD**

via ECF filing, properly addressed to the following:

Gary C. Moss
Veronica Arechederra Hall
Paul T. Trimmer
Jackson Lewis LLP
3800 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Attorneys for Ramparts, Inc.

/s/ *Dinh Luong*
Dinh Luong

1