RICHARD G. McCRACKEN, #2748
SARAH GROSSMAN-SWENSON, #11979
McCRACKEN, STEMERMAN,
& HOLSBERRY, LLP
1630 South Commerce Street, Suite A-1
Las Vegas, Nevada 89102
PH:    (702) 386-5107
FAX:  (702) 386-9848


*Attorneys for Local Joint
Executive Board of Las Vegas;
Culinary Workers' Union, Local 226*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS; CULINARY WORKERS' UNION, LOCAL 226, | Case No. 2:12-cv-01963-GMN-CWH |
| Plaintiffs & Petitioners, | |
| vs. | **PETITIONERS' REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS COUNTERCLAIM AND MOTION TO CONFIRM AND ENFORCE A LABOR ARBITRATION AWARD** |
| RAMPARTS, INC., d/b/a LUXOR HOTEL/CASINO, a Nevada corporation, and Does 1-10, | |
| Defendants & Respondents. | **[Fed. R. Civ. P. 12(b) & 12(c)]** |

## <u>TABLE OF CONTENTS</u>

I. Introduction ................................................................................................ 1

II. Argument ..................................................................................................... 2

 A. The Employer has failed to state a plausible claim for relief. .............................. 2

 B. The Employer's argument that the Award may be vacated based on a series of non-prejudicial procedural irregularities has no support in the case law. ........................ 2

  1. The Employer has not sufficiently alleged undue means. .................................. 4

  2. The Employer has not sufficiently alleged evident partiality. ........................... 5

  3. The Employer has not sufficiently alleged prejudicial misbehavior. ................. 6

  4. The Employer has not sufficiently alleged exceeding scope of authority and imperfectly executing powers, or that the Arbitrator engaged in *functus officio* conduct..................................................................................................... 7

 C. The cases cited by the Employer do not support vacating the Award. ................. 8

  1. The cases cited by the Employer are distinguishable because they involve failure to allow the presentation of evidence, or the failure to participate by all arbitrators on a panel. ................................................................................. 8

  2. The cases cited by the Employer do not support the Employer's contention that allowing the parties to submit briefing was "a shame and a futile exercise." ........... 10

  3. The Employer has not sufficiently alleged that the Arbitrator made any conclusions before the close of evidence. ................................................... 11

 D. Discovery is not appropriate and should not be permitted. ................................ 13

 E. A 12(c) motion is ripe because actions to vacate an arbitration award must be made by motion, not by complaint or counterclaim.................................................... 15

III. Conclusion ................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.G. Edwards & Sons, Inc. v. McCollough*,
   967 F.2d 1401 (9th Cir. 1992) (*per curiam*), *cert. denied*, 506 U.S. 1050 (1993) ........ 6

*Andros Compania Maritima v. Marc Rich & Co.*,
   579 F.2d 691 (2d Cir.1978).................................................................................. 13, 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................... 2, 5, 14

*Ass'n of W. Pulp & Paper, Loc. 78 v. Rexam Graphic*,
   221 F. 3d 1085 (9th Cir. 2000) ........................................................................... 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).......................................................................................... 2

*Bhd. of Teamsters v. Silver State Disposal Service*,
   109 F.3d 1409 (9th Cir. 1997) ........................................................................ 7

*Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Celotex Corp.*,
   708 F.2d 488 (9th Cir. 1983) .......................................................................... 13

*Charleson v. Hardesty*,
   839 P.2d 1303 (Nev. 1992) .............................................................................. 5

*District 17, United Mine Workers of Am. v. Apogee Coal Co.*,
   13 F.3d 134 (4th Cir. 1993) ............................................................................ 16

*Goss Golden West Sheet Metal, Inc. v. Sheet Metal Workers, Local 104*,
   933 F. 2d 759 (9th Cir. 1991) ......................................................................... 3

*Hoeft v. MVL Group, Inc.*,
   343 F. 3d 57 (2d Cir. 2003)............................................................................. 13

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010) .................................................................. 2, 12, 14

*Interior Finish Contractors Assoc. of Del. Valley v. Drywall Finishers Local
   Union No. 1955*,
   625 F.Supp. 1233 (E.D. Pa. 1985) ............................................................. 15, 16

*International Brotherhood of Electrical Workers, Local Union 1823 v. WGN of Colorado, Inc.*,
    615 F.Supp. 64 (D. Colo. 1985) .......................................................................... 10, 11

*John Wiley & Sons, Inc. v. Livingston*,
    376 U.S. 543 (1964) ................................................................................................ 3

*Kruse v. Sand Bros. & Co. Ltd.*,
    226 F.Supp.2d 484 (S.D.N.Y. 2002) .............................................................. 15, 16

*Legion Ins. Co. v. Insurance General Agency, Inc.*,
    822 F. 2d 541 (5th Cir. 1987) ............................................................................. 13

*Murphy Oil USA Inc. v. United Steelworkers AFL-CIO Local 8363*,
    Case No. 08-3899, 2009 U.S. Dist. LEXIS 19098 (E.D. La.) .......................... 9, 10, 11

*Nordahl Dev. Corp. Inc. v. Salomon Smith Barney*,
    309 F.Supp.2d 1257 (D. Or. 2004) ....................................................................... 5

*O.R. Securities, Inc. v. Professional Planning Assocs., Inc.*,
    857 F.2d 742 (11th Cir.1988) ...................................................................... 13, 15, 16

*Portland General Elec. v. U.S. Bank Trust Ass'n*,
    38 F. Supp. 2d 1202 (D. Or. 1999) ...................................................................... 14

*Service Employees Int'l Union v. St. Vincent Medical Ctr.*,
    344 F.3d 977 (9th Cir. 2003) ................................................................................. 3

*Sheet Metal Workers Int'l Ass'n Local 420 v. Kinney Air Conditioning Co.*,
    756 F.2d 742 (9th Cir.1985) .............................................................................. 3, 7

*Sheet Metal Workers Int'l Ass'n Local No. 252 v. Standard Sheet Metal, Inc.*,
    699 F.2d 481 (9th Cir. 1983) ........................................................................ 12, 13, 15

*Stead Motors v. Automotive Machinists Lodge 1173*,
    886 F.2d 1200 (9th Cir. 1989) ......................................................................... 2, 12

*Teamsters Local 312 v. Matlack Inc.*,
    118 F.3d 985 (3d Cir. 1997) .............................................................................. 4, 8

*Toyota of Berkeley v. Automobile Salesmen's Union, Local 1095*,
    834 F.2d 751 (9th Cir.1987), *cert. denied*, 486 U.S. 1043 (1988) ....................... 5

*U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*,
    591 F.3d 1167 (2010) ......................................................................................... 6, 8

iv

*Woods v. Saturn Distrib. Corp.*,
  78 F.3d 424 (9th Cir. 1996) ................................................................. 5, 6, 13

**STATUTES**

N.R.S. 38.241(2) ........................................................................................... 13

**OTHER AUTHORITIES**

Cal. R. Ct., rule 3.820(b)(1) .......................................................................... 5

Nev. Code of Judicial Conduct, rule 2.9(a)(1) ............................................... 5

FED.R.CIV.P., rule 7(b)(1) ............................................................................ 15

FED.R.CIV.P., rule 12(b)(6) ........................................................................... 2

## I.      INTRODUCTION

Grievant Yulanda Hodge was unjustly terminated from her job as a cashier at the Luxor Hotel & Casino ("Ramparts, Inc.," or the "Employer"), and the Employer has refused to reinstate her, despite a final and binding arbitration Award granting her reinstatement and backpay.  At the opening of the hearing, before taking any evidence, the Arbitrator mentioned that he might give the parties his opinion after close of evidence if he did not think briefing would be helpful.  The Employer did not object to the Arbitrator's stated procedure at that time.  After the close of evidence, the Arbitrator, in keeping with his prior comments, advised the parties' attorneys in an off-the-record conference that it was his initial assessment that the Employer did not meet its burden of proof.  He wanted to see if the Employer and Union could agree to put Ms. Hodge back to work while they figured out backpay.

After counsel for the Employer objected that she had not been given the opportunity to make a closing argument, the Arbitrator clarified that he remained open to hearing argument and receiving briefing, and a briefing schedule was set.  Several months later, the Employer asked the Arbitrator to recuse himself because he gave his initial opinion prior to receiving the briefing.  The Arbitrator refused because he did not find it necessary.  Both parties then submitted briefing on the merits of the dispute, and the Arbitrator ruled in favor of the Union.

The Employer has now refused to comply with the Award, and has filed a "counterclaim" to vacate the arbitration award, alleging numerous grounds of bias.  It alleges, without any basis in the case law, that once the Arbitrator advised the parties of his preliminary opinion, that this somehow so tainted his judgment that he could no longer be unbiased.  But as the cases cited by the Employer show, courts routinely remand cases to the same arbitrators for further consideration after vacating awards where the arbitrator failed to hear all evidence before rendering a decision.  The fact that the Arbitrator shared his early reasoning does not make him any more biased than it makes a court biased for publishing a tentative ruling.  The Employer essentially

1

concedes that it cannot meet any of the individual grounds for vacating an award, arguing that it was the "totality" of the Arbitrator's conduct that justifies vacation of the award. Luxor resorts to overblown rhetoric and the usual begging for discovery instead of attempting to show how its allegations meet pleading standards.

The Arbitrator was not biased against the Employer. The Arbitrator simply concluded, after considering all evidence and arguments presented, that the Employer's case did not have merit. The Award should be confirmed without further delay.

## II.    ARGUMENT

### A.    The Employer has failed to state a plausible claim for relief.

To avoid dismissal under Rule 12(b)(6), the claim must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Employer argues that it has stated a claim entitling it to relief by noting that it included approximately seven different grounds that if proven would entitle it to relief. (Opp. Brief at 8.) But the bare recitation of legal standards from labor law cases and the Federal Arbitration Act does not state a plausible claim for relief.

As the Supreme Court has explained, mere legal conclusions couched as factual allegations "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Therefore, they "are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010) (citation omitted).

Rather, the Employer must state facts supporting each of its legal contentions. As detailed below, it has failed to do so, and so the Counterclaim should be dismissed.

### B.    The Employer's argument that the Award may be vacated based on a series of non-prejudicial procedural irregularities has no support in the case law.

As the Union explained in its opening brief, the grounds for vacating a labor arbitration award are extremely limited, and review of an award is highly deferential. *See Stead Motors v. Automotive Machinists Lodge 1173*, 886 F.2d 1200, 1205 (9th Cir. 1989)

2

(describing the "nearly unparalleled degree of deference" given to labor arbitrators' decisions).  The facts offered in the Counterclaim, even if taken as true, simply do not state a claim on which relief may be granted.  The Employer argues that an award may be vacated when an arbitration is "permeated with fundamental procedural irregularities." (Opp. at 10.)  But this is not the standard: even the cases cited by the Employer acknowledge that procedural irregularities must be so "fundamentally *unfair*" as to justify vacating the award; they do not hold the award may be vacated where there are irregularities related to "fundamental procedures."  In other words, the focus is not on the specific procedure, but on any unfair prejudice that resulted.[1]

The Employer claims that the Union has "attempted to justify each singular occurrence," and argues that the "totality of Arbitrator Christopher's conduct … deprived Luxor of its right to a fair hearing" and justifies vacating the Award.  (Opp. at 12.)  In making this argument, the Employer implicitly concedes that none of the identified factual allegations about the Arbitrator's actions justify vacating the Award.  The "totality of conduct" argument has no basis in the law.

Indeed, the Ninth Circuit has made clear that "routine" procedural misconduct does not suffice to vacate an award.  *Sheet Metal Workers Int'l Ass'n Local 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 745 (9th Cir.1985); *Goss Golden West Sheet Metal, Inc. v. Sheet Metal Workers, Local 104*, 933 F. 2d 759, 763-64 (9th Cir. 1991) ("mere procedural irregularity provides no basis upon which to conclude" that the arbitrator "acted beyond [his] authority.").

---

[1] The Employer also argues that the procedural cases cited by the Union "do not address a party's request for vacatur due to fundamental procedural irregularities."  (Opp., p. 11, n.5.)  This, of course, is not surprising, because there is no such legal standard.  Rather, the cases on procedure cited by the Union demonstrated that the Arbitrator had the *authority* to make all procedural decisions, including the decision on whether or not he thought he needed briefing to decide the case.  *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 577-79 (1964); *Service Employees Int'l Union v. St. Vincent Medical Ctr.*, 344 F.3d 977 (9th Cir. 2003).

The Employer cites a Third Circuit decision that found that an award may be vacated where "procedural irregularities … result in such fundamental unfairness as to warrant the vacation of an arbitral award." *Teamsters Local 312 v. Matlack Inc.*, 118 F.3d 985 (3d Cir. 1997).  But the *Matlack* case involved a specific prejudicial and fundamentally unfair act: ruling on an issue on which one party had not yet been allowed to offer any evidence.  Here, the Employer does not and cannot point to any decision or conclusion in the Award that was prejudiced by any of the routine procedural decisions made by the Arbitrator.  As discussed further in Part C.1-2 below, the Employer's primary argument—that it was prejudiced by not being able to argue before the Arbitrator announced his tentative conclusions—does not provide a basis for vacating the Award.

Indeed, in looking at each of the specific grounds that the Employer raised in its Counterclaim, the Employer has not sufficiently pleaded facts justifying vacating the Award.

### 1.    The Employer has not sufficiently alleged undue means.

Using dramatic rhetoric, the Employer argues that the Union engaged in an "immoral, ex parte communication(s)" in advance of the hearing.  (Opp. at 14.)  But the Employer has not stated a plausible claim for relief.  It only alleges that there was a single *ex parte* communication about dates, and that it agreed to proceed to arbitration despite this communication.  (Counterclaim, ¶ 4.)

Additionally, this communication was not "immoral."  Some arbitration guidelines, including the California Rules of Court, explicitly permit *ex parte* communications regarding hearing dates, stating: "An arbitrator may communicate with a party in the absence of other parties about administrative matters, such as setting the time and place of hearings.... When such a discussion occurs, the arbitrator must promptly inform the other parties of the communication and must give the other parties an opportunity to respond before making any final determination concerning the matter

discussed." (Cal. R. Ct., rule 3.820 (b)(1) (2007).)[2] That is precisely what happened here: the communication concerned scheduling, it was promptly disclosed, and the Employer's attorney was given an opportunity to respond. (Counterclaim, ¶ 4.) She objected and no further *ex parte* conversations occurred. (*Id.*) It was not immoral, nor did it constitute undue means.

The bare assertion that the Union procured the award by undue means is a mere legal conclusion. It does not state a plausible claim that defeats a motion to dismiss. *See Iqbal*, 556 U.S. at 664.

### 2.    The Employer has not sufficiently alleged evident partiality.

The Employer acknowledges that it "cannot possibly have knowledge of the specific predispositions of Arbitrator Christopher prior to conducting discovery," (Opp. at 15-16), and claims that it merely must allege facts that create a "reasonable impression of partiality." (Opp. at 16.) But this is the wrong legal standard. The "reasonable impression" legal standard only applies where the Arbitrator is alleged to have failed to disclose a relationship or financial interest. Here, by contrast, the Employer has not made any allegations about failure to disclose a relationship or financial interest, so the Employer must prove actual bias. *See Woods v. Saturn Distrib. Corp.*, 78 F.3d 424, 430 (9th Cir. 1996).

In an actual bias case, "evidence giving rise to the appearance of impropriety is *not* sufficient to establish evident partiality." *Nordahl Dev. Corp. Inc. v. Salomon Smith Barney*, 309 F.Supp.2d 1257, 1266 (D. Or. 2004); *see also Toyota of Berkeley v. Automobile Salesmen's Union, Local 1095*, 834 F.2d 751, 755 (9th Cir.1987), *cert. denied*, 486 U.S. 1043 (1988) ("the appearance of impropriety, standing alone, is insufficient to establish [actual] bias"). Further, as discussed in Part D below, discovery

---

[2] Nevada courts routinely look to California courts for guidance on similar statutory language, or where there is no Nevada case law. *See, e.g., Charleson v. Hardesty*, 839 P.2d 1303, 1307 (Nev. 1992). A similar rule has been adopted for judges by the Nevada Code of Judicial Conduct, rule 2.9(a)(1) (permitting *ex parte* communications for scheduling when circumstances require it).

into the Arbitrator's specific predispositions is not permitted even when actual bias cannot be alleged without such discovery.  *See Woods*, 78 F.3d at 430 ("Although it may be difficult to prove actual bias without deposing the arbitrators, depositions of arbitrators are 'repeatedly condemned' by courts.")

This high standard for alleging actual bias is a reflection of the great deference given to labor arbitration decisions.  When an arbitrator's award and opinion relies on grounds that do not have anything to do with bias, the award should be presumed to have relied on permissible grounds.  *See A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992) (*per curiam*), *cert. denied*, 506 U.S. 1050 (1993) (arbitrators presumed to have relied on permissible grounds for awards).

The Employer admits that at most the Arbitrator's comment regarding Albanian and Latina heritage creates a "reasonable impression of partiality" rather than actual bias. (Opp. at 15-16.)  This is not enough to state a claim for evident partiality.[3]

### 3. The Employer has not sufficiently alleged prejudicial misbehavior.

The Union has explained that the Employer has failed to allege that any of its factual allegations resulted in any prejudice to the Employer.  *See U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1176 (2010) (*ex parte* conduct constitutes "misbehavior" only if the conduct "prejudices the rights of a party").  The Employer argues that it is not "required to prove its case in chief at this stage in the proceedings." (Opp. at 16.)  Whether or not this is true in a case to confirm or vacate an arbitration award, a party still must *allege* facts that show it has been prejudiced.  It has not made any allegations about how its case was prejudiced other than to protest the Arbitrator

---

[3] The Employer also argues it has included allegations of gender discrimination against the Employer's counsel by arguing that the Arbitrator "held Luxor's counsel in a locked room... to bully her into accepting his 'curative' measure to consider sham briefs on the dispute." (Opp. at 15.)  While the Employer cites to paragraph 13 of the Counterclaim in support of this claim, this serious allegation of false imprisonment does not appear in the Employer's Counterclaim.  (*See* Counterclaim, ¶ 13.)  At most, paragraph 14 alleges that the court reporter was "locked *out*" of the room, not that the Employer's counsel was locked *in*.  (*See id.*, ¶ 14 (emphasis added).)

sharing his tentative opinions prior to the Employer's legal argument.  For example, it has not alleged that it was not allowed to put on certain types of evidence, or call certain witnesses, and that this prevented it from meeting its burden of proof.  Because the Employer does not make any allegations about ways in which the Employer was prejudiced by the Arbitrator's alleged misconduct, it has not stated a plausible claim for prejudicial misbehavior.

> **4.** **The Employer has not sufficiently alleged exceeding scope of authority and imperfectly executing powers, or that the Arbitrator engaged in *functus officio* conduct.**

As explained in the Union's opening brief, this part of the FAA likely cannot be applied to a labor arbitration award because it seems to establish a standard for review that is in conflict with that prescribed under Section 301.  *Ass'n of W. Pulp & Paper, Loc. 78 v. Rexam Graphic*, 221 F. 3d 1085, 1090-91 (9th Cir. 2000) (proper standard of review is that "an arbitration award must draw its essence from the CBA").  The Arbitrator had the authority to tell the parties that he might offer his opinions after the close of evidence and before briefing, and to set up a briefing deadline as part of the bundle of procedural issues submitted to him during the arbitration.  *See Kinney*, 756 F.2d at 744-45.  The Employer does not dispute that the stipulated issue was whether there was just cause for Ms. Hodge's termination.  The Arbitrator had the power to determine the scope of issues before him, which included billing for the case, as the collective bargaining agreement contained a "loser pays" provision for termination cases.  (Compl., Exh. A, p. 53 & Ans. ¶ 8 (admitting Exh. A to the Complaint is true and correct copy of Article 21).)

The Employer also argues that issuing a second award with a minor clarification about billing somehow "tainted the entirety of the proceedings."  (Opp. at 18.)  But this similarly has absolutely no basis in the case law or reason.  The Arbitrator was permitted to clarify his award with regarding to billing without obtaining specific permission from the Employer.  *See Bhd. of Teamsters v. Silver State Disposal Service*, 109 F.3d 1409, 1412 (9th Cir. 1997).

**C.      The cases cited by the Employer do not support vacating the Award.**

The Employer argues that the Arbitrator's conduct was "procedurally improper" and that procedural errors may provide a "valid basis to vacate labor arbitration awards." (Opp. at 10.)  The three cases on which the Employer relies – a Third Circuit case, a 1985 Colorado district court case, and an unpublished district court case from Louisiana – involve circumstances where the outcome of the arbitration was changed because of a specific procedural error: where the Arbitrator promised to consider evidence, and then ruled without doing so, or where not all members of an arbitration panel participated in issuing a decision.  Additionally, the Ninth Circuit has made clear that even in non-labor cases, a party's rights must have been *prejudiced* by procedural error, such as when an arbitrator misleads a party into believing that evidence was admitted, and then rules against the party for failing to provide evidence on that same point.  *U.S. Life Ins. Co.*, 591 F.3d at 1176.

**1.      The cases cited by the Employer are distinguishable because they involve failure to allow the presentation of evidence, or the failure to participate by all arbitrators on a panel.**

In *Matlack Inc.*, 118 F.3d 985, the arbitrator told the parties that he would not decide a particular issue without allowing the parties to provide further evidence.  Despite this promise, the arbitrator then proceeded to rule on the very issue on which he had promised the parties that he would not rule without hearing additional evidence.  *Id.* at 996.  After the company appealed, the arbitrator concluded he committed a substantial procedural error and withdrew from the case.  After the arbitrator withdrew, the court found that it was appropriate to vacate the initial award that had been left standing, finding the award had failed to consider any evidence from the company.

Here, by contrast, all that the Employer alleges is that the Arbitrator shared his preliminary opinion about the case *after* the close of evidence and prior to closing

argument.[4]  (Counterclaim, ¶ 14 ("it's my conclusion now, with the close of evidence, that ... the company has failed to meet its burden of proof").  It is this act that the Employer refers to as the Arbitrator's "most unusual and prejudicial act."  (Opp. at 5.)  The Arbitrator then accepted closing argument, promising to keep an open mind and consider all arguments.  (Counterclaim, Exh. 2, p. 2.)  The Employer was not prejudiced by the Arbitrator's actions any more than the Employer was "prejudiced" by failing to put on a winning case.  Moreover, the Employer raised the issue of the Arbitrator being biased because he shared his initial thoughts, and the Arbitrator considered the Employer's argument and determined that he would be able to decide the case while being open to argument.  (Counterclaim, ¶¶17-18, 20 & Exh. 2, p. 2.)

Similarly, in *Murphy Oil USA Inc. v. United Steelworkers AFL-CIO Local 8363*, Case No. 08-3899, 2009 U.S. Dist. LEXIS 19098 (E.D. La.), an unpublished decision cited by the Employer, the arbitrator met with both parties about a grievance, but did not hold an evidentiary hearing.  *Id.* at *2.  The parties agreed to brief a single issue (whether a written agreement allowed the employer to fire certain employees), and agreed that they would hold an evidentiary hearing if the arbitrator concluded that the agreement itself did not permit the firing of the employees.  *Id.* at *2-3.  The arbitrator then issued a complete decision in favor of the union, without permitting the employer to present evidence as the parties had previously agreed.  *Id.* at *3.  The court found that it was appropriate to vacate the award because no evidentiary hearing was held, and this right was not waived.  *Id.* at *6.  The motion to vacate was granted, and it was remanded to the *same* arbitrator for an evidentiary hearing and additional decision.

Unlike *Murphy Oil*, there is no allegation here that an evidentiary hearing was not held.  Quite the contrary, there were a full three days of hearing held, an unusually lengthy arbitration hearing for a "just cause" hearing involving a single employee.  The

---

[4] While the Employer argues that it stated that the Arbitrator made conclusions before the close of evidence (Counterclaim, ¶¶ 7(3) & 25), the Counterclaim does not include any factual allegations in support of this assertion.  (See discussion in Part C.3 below.)

9

court in *Murphy Oil* found that fact that the arbitrator had issued an initial award in favor of the union did not make him biased such that he could not re-hear the case. *Murphy Oil* suggests that there was no impropriety here with regard to the conclusions made by the Arbitrator after hearing evidence.

Finally, in *International Brotherhood of Electrical Workers, Local Union 1823 v. WGN of Colorado, Inc.*, 615 F.Supp. 64 (D. Colo. 1985), the parties had a three-member arbitration panel, but the decision was only signed by one of the arbitrators. *Id.* at 65. The decision was prepared only by the neutral arbitrator, and there was no attempt to involve the other two arbitrators in the deliberation or decision. *Id.* The court found it was appropriate to vacate the award, but remand it to the *same* three-member arbitration panel to issue a majority decision. *Id.* at 68. The court found that "a new arbitration panel and a new hearing are unnecessary and will not be granted." *Ibid.* The court explained that it was unnecessary to rehear any evidence, and that the panel must only review the evidence and reach a majority opinion. *Ibid.*

Here, there is no allegation that the Arbitrator failed to participate in the decision. Additionally, the remedy suggested by *WGN* is that after a procedural irregularity, even one justifying vacation of the award, the *same* arbitrator or panel may correct that procedural problem by merely reviewing the evidence and re-issuing the award.

### 2.      The cases cited by the Employer do not support the Employer's contention that allowing the parties to submit briefing was "a shame and a futile exercise."

The Employer does not cite any cases in support of its theory that an arbitrator who offers an off-the-record advisory opinion is engaging in a "sham and futile exercise" by accepting briefing after, and is somehow so fundamentally tainted by offering his initial reaction to evidence that he cannot consider additional arguments with a fair mind. (See Opp. at 12.) In fact, the process is much like a court issuing a tentative ruling: the court advises both parties, at the same time, of its current approach, while allowing either side to provide additional argument if it disagrees with the court's tentative opinion.

In the *Murphy Oil* case cited by the Employer, the arbitrator had concluded that holding an evidentiary hearing would be *futile* because he had already found that the employer had violated the collective bargaining agreement, stating that a hearing would "serve no useful purpose." *Murphy Oil*, Case No. 08-3899, at *3. Nevertheless, the court remanded the case to the *same* arbitrator to hold a hearing after vacating his initial award. *Id.* at *7. This case demonstrates that, contrary to what the Employer argues, the issuance of an award against a party—before hearing all evidence—does not somehow fundamentally taint the arbitrator's ability to be neutral in future proceedings.

Similarly, the neutral arbitrator's issuance of an initial decision in *WGN* did not somehow prejudice him and the other arbitrators such that they could not issue a compliant decision. Here, even taking the Employer's allegation as true that an "award" was issued on the last day of the hearing, the Arbitrator has already fully corrected any such error by accepting arguments from the Employer in a brief on the merits, and by considering those arguments in issuing his Award. (Counterclaim, Exh. 2, p. 2.) The remedy suggested by the court's decision in *WGN* is precisely the remedy that was already granted by the Arbitrator here: an opportunity to make full argument on the merits prior his issuing an award. (Counterclaim, ¶¶ 19-20 & Exh. 2, p. 2.) The mere fact that the Employer lost does not prove that the Arbitrator was prejudiced by procedural irregularities.

### 3. The Employer has not sufficiently alleged that the Arbitrator made any conclusions before the close of evidence.

In its opening brief, the Union showed that the Employer's only factual allegations concerning statements the Arbitrator made about findings of fact were those made after close of evidence. The Employer argues that paragraph 7 of its Counterclaim "specifically states that findings of fact were made before the close of evidence." (Opp. at 5, n.3.) While it may be true that the Employer made the bare legal assertion that "findings of fact were made before the close of evidence," it does not allege what they were or how this is known. The Employer seems to be arguing that the Arbitrator "must

have" made findings before the evidence was closed.  If the Employer means that the Arbitrator was drawing mental conclusions, to himself, about the evidence he was hearing, then the answer is *of course* he was doing this—like every trier of fact.

The only factual allegations the Employer makes about statements by the Arbitrator regarding findings of fact are those allegations made *after* the close of evidence.  (See Counterclaim, ¶ 14 ("it's my conclusion now, with the close of the evidence, that the record showed to me clearly … that the Company has failed to met its burden of proof in this case.").)  The Arbitrator himself specifically notes that the parties were afforded full opportunity for examination and cross examination of witnesses, the introduction of briefs, and argument.  (Counterclaim, ¶ 20 & Exh. 2, pp. 1-2.)  The opinion also notes that the Arbitrator told counsel of his opinion "after close of evidence."[5]  (*Id.* at p. 4.)  The Employer does not provide any allegations of statements made by the Arbitrator before the close of evidence other than its bare legal conclusion.  As explained above, a legal conclusion couched as a factual allegation is not sufficient to defeat a motion to dismiss.  *In re Cutera Sec. Litig.*, 610 F.3d at 1108.

Additionally, the Employer makes the odd contention that the Arbitrator issued an "off the record decision" and "rendered a decision on the merits" at the hearing.  (Opp. at 12.)  As the Arbitrator explains in his opinion, he advised the parties' counsel in a private off-the-record discussion after the close of evidence that the Company failed to prove that the grievant committed theft.  (Counterclaim, Exh. 2, p. 4.)  But if the Arbitrator in fact issued an award on March 16, 2012, the Employer would be time-barred from contesting that award and barred from further legal action to vacate the award as it did not raise the issue within 90 days of issuance of the award.[6]

---

[5] The Arbitrator's findings on the opportunity to provide evidence and argument, and his finding that he shared his opinion after close of evidence, are, like all factual conclusions, presumed true for purposes of review.  *Stead Motors*, 886 F.2d at 1209 (9th Cir. 1989).

[6] "[A] party opposing an arbitration award must move to vacate the award or be barred from further legal action."  *Sheet Metal Workers Int'l Ass'n Local No. 252 v. Standard Sheet Metal, Inc.*, 699 F.2d 481, 482 (9th Cir. 1983).  Failure to petition to vacate an unfavorable arbitration award within the applicable statutory period bars "all defenses to

**D.      Discovery is not appropriate and should not be permitted.**

The policy of expedited judicial action to confirm arbitration awards does not permit full scale litigation and attendant discovery.  *O.R. Securities, Inc. v. Professional Planning Assocs., Inc.*, 857 F.2d 742, 748 (11th Cir.1988).  As discussed further in Part E below, proceedings to confirm and vacate awards are summary proceedings, not full civil cases.  Because of this, discovery is not warranted in such proceedings, even in situations where a party cannot show actual bias without discovery.  *Woods*, 78 F.3d at 430-31.

Courts have "repeatedly condemned efforts" to depose arbitrators.  *Woods*, 78 F.3d at 430; *O.R. Securities*, 857 F.2d at 748; *Legion Ins. Co. v. Insurance General Agency, Inc.*, 822 F. 2d 541, 543 (5th Cir. 1987); *Hoeft v. MVL Group, Inc.*, 343 F. 3d 57 (2d Cir. 2003); *Andros Compania Maritima v. Marc Rich & Co.,* 579 F.2d 691, 702 (2d Cir.1978).

In *Woods*, a party claimed he was not able to show actual bias and seemed to argue that "only deposition of the arbitrators would enable him to establish actual bias."  *Woods*, 78 F.3d at 430.  The Ninth Circuit rejected this argument, noting the party had never sought to examine the arbitrator during the arbitration, and found that the district court did not abuse its discretion in not permitting discovery.  *Id.* at 430-31.

In *Andros*, the Second Circuit upheld a district court's refusal to allow discovery regarding an arbitrator's relationship with a party in a case where the allegation was that the arbitrator had a professional relationship with the party.  The court found it was "a classic example of a losing party seizing upon a pretext for invalidating the arbitration award."  *Andros*, 579 F.2d at 702; *see also Portland General Elec. v. U.S. Bank Trust*

---

arbitration awards" in a subsequent proceeding to confirm the award.  *Id.* at 483; *see also Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Celotex Corp.*, 708 F.2d 488, 490 (9th Cir. 1983).  In Section 301 cases, the statute of limitations for vacating labor arbitration awards is drawn from state law. *Standard Sheet Metal*, 699 F.2d at 483 n.2.  In Nevada, a petition to vacate an arbitration award must be made within ninety days of notice of the award.  N.R.S. 38.241(2).  Here, if an award was issued orally on March 16, 2012, the Employer would be time-barred from contesting the Award in this proceeding.

*Ass'n*, 38 F. Supp. 2d 1202, 1208 (D. Or. 1999) ("No discovery can be had where all that exists is a claim of bias based upon a former professional relationship between the parties.")

The Employer seeks to conduct discovery to go fishing for *ex parte* conversations as evidence of bias.  The Employer admits that the only *ex parte* conversation that it is aware of was one involving the Union's attorney requesting arbitration dates from the Arbitrator.  (Opp. at 4.)  It does not dispute that it raised the issue, and decided to proceed to use the same Arbitrator despite the fact that there was an *ex parte* conversation about scheduling.  The Employer insists that it may nonetheless turn up evidence of undue means by way of discovery.  But as the Supreme Court made clear in *Iqbal*, legal conclusions couched as factual allegations "are not entitled to the assumption of truth," *Iqbal*, 556 U.S. at 664, and therefore "'are insufficient to defeat a motion to dismiss for failure to state a claim.'"  *In re Cutera Sec. Litig.*, 610 F.3d at 1108 (citation omitted). Simply stating the bare legal conclusion that the Union used "undue means" is not enough to survive a motion to dismiss, much less provide any reason for the Employer to obtain discovery.   "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

Here, there is no reason to depose the Arbitrator. As explained in the Union's opening brief, this is not a non-disclosure case, where the Arbitrator failed to disclose a personal interest in the outcome of the case. The Arbitrator stated in his Award that the parties had a full opportunity to present evidence, and that he considered all evidence and arguments presented by the parties.  The Employer's selection of a single out-of-context statement that the Employer believes may show gender and/or national origin bias does not provide justification for conducting discovery.  The Employer does not show how this alleged gender and/or national origin bias against Employer's counsel resulted in

prejudice, or made the Arbitrator pre-disposed to *favor* the grievant, who was also a woman.[7]

> ### E.     A 12(c) motion is ripe because actions to vacate an arbitration award must be made by motion, not by complaint or counterclaim.

The Employer argues that the pleadings are not complete because the Union has not answered the Counterclaim.  But the Union does not have to answer the Counterclaim because it is not the proper vehicle for challenging an arbitration award.

Actions to vacate an arbitration award are to be made by motion, not by complaint or counterclaim.  "The statutes and rules do not permit a party to initiate a challenge to an arbitration award by filing a complaint..." *O.R. Securities v. Professional Planning Assoc.*, 857 F.2d 742, 745 (11th Cir. 1988) (internal citations omitted); *Kruse v. Sand Bros. & Co. Ltd.*, 226 F.Supp.2d 484, 486-87 (S.D.N.Y. 2002) ("a party cannot initiate a challenge to an arbitration award by filing a complaint or an application"); *Sheet Metal Workers' Int'l Assoc., Local 252 v. Standard Sheet Metal Inc.*, 699 F.2d 481, 482 (9th Cir. 1983) ("a party opposing an arbitration award must *move* to vacate the award or be barred from further legal action") (emphasis added).

This is true for applications to vacate arbitrations conducted pursuant to collective bargaining agreements.  *See Interior Finish Contractors Assoc. of Del. Valley v. Drywall Finishers Local Union No. 1955*, 625 F.Supp. 1233 (E.D. Pa. 1985) (noting that Fed.R.Civ.P., rule 7(b)(1) provides that an application to the court for an order shall be made by motion and finding that a party could not challenge a labor arbitration award by filing a complaint).  The Eleventh Circuit has explained that the manner in which an action to vacate an arbitration award is made is important because it affects the burden of proof and the rule of decision to be applied by the district court:

---

[7] While the Employer mentions another case involving the same parties (the Bellagio is owned by the same parent company as the Luxor), it fails to mention that the Arbitrator ruled *in favor* of the Employer – with Employer's same counsel – in that case.  (Opp. at 4, n.1.)  This case alone shows that the Arbitrator was not biased against the Employer and the Employer's attorney, nor predisposed to favor any particular party or attorney.

> If … the application to vacate the award may be brought in the form of a complaint, then the burden of dismissing the complaint would be on the party defending the arbitration award. The defending party would be forced to show that the movant could not prove any facts that would entitle him to relief from the arbitration award. [Cit.]  If the defending party did not prevail on its motion to dismiss, the proceeding to vacate the arbitration award would develop into full scale litigation, with the attendant discovery, motions, and perhaps trial. … The policy of expedited judicial action expressed in … [the FAA], 9 U.S.C. § 6, would not be served by permitting parties who have lost in the arbitration process to file a new suit in federal court.  The proper procedure … is for the party seeking to vacate an arbitration award to file a motion to vacate in the district court.

*O.R. Securities*, 857 F.2d at 745-46; *see also Kruse v. Sand Bros. & Co. Ltd.*, 226 F.Supp.2d at 487 (putting burden of dismissing complaint on party defending arbitration award is "contrary to the FAA and basic principles of fairness").  Such a burden shift is "inimical to the goals of arbitration" because it would impermissibly delay resolution of arbitrated claims.  *See District 17, United Mine Workers of Am. v. Apogee Coal Co.*, 13 F.3d 134, 138 (4th Cir. 1993).

Where a plaintiff brings a "counterclaim" to vacate a labor arbitration award, courts have found that defendants are not required to answer because an application to vacate an arbitration award may not be initiated by filing a complaint.  *See Interior Finish*, 625 F.Supp. at 1240.  Because any challenges to the Arbitration Award must be made by motion, the Counterclaim should be dismissed, and so judgment on the pleadings is appropriate.

## III.    CONCLUSION

Based on the facts alleged by the Employer, it can be determined from the face of the Counterclaim that the Employer does not have any grounds for vacating the Award. The Union's motion to dismiss should be granted, and its motion to confirm and enforce the Award should be granted.

Dated: February 1, 2013                    RESPECTFULLY SUBMITTED,

**McCRACKEN, STEMERMAN,
& HOLSBERRY, LLP**

/s/ *Sarah Grossman-Swenson*

SARAH GROSSMAN-SWENSON
RICHARD G. McCRACKEN

*Attorneys for Petitioners Local Joint Executive
Board of Las Vegas* and *Culinary Workers'
Union, Local 226*

17

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I am an employee of McCracken, Stemerman & Holsberry and that on this 1st day of February, 2013, I caused to be served a true and correct copy of the above and foregoing:

**PETITIONERS' REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS COUNTERCLAIM AND MOTION TO CONFIRM AND ENFORCE A LABOR ARBITRATION AWARD**

via ECF filing, properly addressed to the following:

Gary C. Moss
Veronica Arechederra hall
Paul T. Trimmer
Jackson Lewis LLP
3800 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

*Attorneys for Ramparts, Inc.*

/s/ *Dinh Luong*
Dinh Luong