Gary C. Moss, Bar No. 4304
mossg@jacksonlewis.com
Veronica Arechederra Hall, Bar No. 5855
veronica.hall@jacksonlewis.com
Montgomery Y. Paek, Bar No. 10176
montgomery.paek@jacksonlewis.com
**JACKSON LEWIS P.C.**
3800 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169
Tel: (702) 921-2460
Fax: (702) 921-2461

*Attorneys for Defendant*
*Ramparts Inc. dba Luxor Hotel-Casino*

| | |
|---|---|
| LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS; CULINARY WORKER'S UNION, LOCAL 226 | Case No.: 2:12-cv-01963-GMN-CWH |
| Plaintiff & Petitioners, | |
| v. | |
| RAMPARTS, INC. dba LUXOR HOTEL/ CASINO | **DEFENDANT/COUNTER-CLAIMANT'S OPPOSITION TO PLAINTIFFS/ COUNTER-DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| Defendant & Respondents. | |
| * * * * | |
| RAMPARTS, INC. dba LUXOR HOTEL/ CASINO | |
| Counter-Claimant, | |
| v. | |
| LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS; CULINARY WORKER'S UNION, LOCAL 26 | |
| Counter-Defendant. | |

Defendant/Counter-Claimant RAMPARTS, INC. dba LUXOR HOTEL CASINO ("Defendant," "Counter-Claimant," or "Luxor") hereby submits its opposition to Plaintiffs/Counter-Defendants LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS and CULINARY WORKER'S UNION, LOCAL 26's ("Plaintiffs," "Counter-Defendants" or the

"Union") Motion for Judgment on the Pleadings ("Motion").

This opposition is supported by the following Memorandum of Points and Authorities, the pleadings and papers on file herein, and any such further argument as the Court may deem appropriate.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.     <u>INTRODUCTION</u>

The Union has brought a meritless Motion for Judgment on the Pleadings that rehashes its arguments in its previous Motion to Dismiss Counterclaim and Motion to Confirm and Enforce a Labor Arbitration Award.  [Doc. No. 9].  This Court previously denied the Union's Rule 12(c) Motion for Judgment on the Pleadings in part because the Union had not filed a responsive pleading and the pleadings were not closed.  Order [Doc. No. 16] at 10:19-11:1.  The Union now uses the filing of its Answer and the close of pleadings to re-file nearly identical arguments without any new compelling facts or arguments as to why Luxor does not have a plausible claim.

In its new Motion, however, the Union has overlooked this Court's Rule 12(b)(6) analysis which applies equally to a renewed Rule 12(c) motion.  In its last Order, this Court held that Luxor's Counterclaim "sufficiently states a claim upon which relief can be granted" and that Luxor alleged "sufficient facts to show that violations of law are plausible, and not merely possible" under the Rule 12(b)(6) standard.  Order [Doc. No. 16] at 11:7-10.  As an example of Luxor's plausible claim, the Court explained that the existence of two different arbitration Awards was already sufficient to defeat the Union's Motion to Dismiss with a plausible claim that the Arbitrator exceeded his authority under the doctrine of *functus officio*.  The Union's filed Answer does not dispute the existence of two different Awards and instead, the Union itself argues that the second Award was a "clarification."  Thus, the Union again does not dispute that two Awards exist.

The Union's burden is straightforward.  Under Rule 12(c), the Union must show that even if all of the Luxor's alleged facts were true, that there is no Counterclaim as a matter of law.  The Union, in its Answer, denies or disputes every material fact alleged by Luxor.  Therefore, the

1   Union does not even come close to showing that Luxor does not have a plausible Counterclaim
2   for vacating the arbitration award.

3   **II.     FACTS**

4       The Court previously sorted through the Union's confusing and conflated arguments when
5   it ruled on the Union's Motion to Dismiss Counterclaim and to Confirm and Enforce a Labor
6   Arbitration Award, which sought to both dismiss claims and prevail on the merits of the Union's
7   Complaint.  Motion to Dismiss Counterclaim and to Confirm and Enforce a Labor Arbitration
8   Award [Doc. No. 9].  In its prior motion, the Union argued the following flawed premise – that it
9   could file a complaint to enforce the arbitration award, but Luxor was barred from filing a
10  counterclaim to vacate the arbitration award.  Now, without citing any undisputed facts in its
11  Answer or conducting any discovery, the Union has brought a repetitive Motion for Judgment on
12  the Pleadings on issues already addressed by this Court.

13          **A.     The Court's Holding Regarding A Plausible Claim Under Rule 12(b)(6).**

14      In its previous Order, the Court already analyzed whether or not Luxor's Counterclaim
15  was a claim upon which relief could be granted under the Rule 12(b)(6) standard.  As in the
16  Court's Order, the analysis of a motion for judgment on the pleadings under 12(c) is substantially
17  identical to that of a 12(b)(6) motion.  Order [Doc. No. 16] at 7:1-3.  Therefore, the Court's
18  previous analysis under Rule 12(b)(6) directly applies to the Union's current Motion for
19  Judgment on the Pleadings under Rule 12(c).

20      Under Rule 12(b)(6), the Court held that Luxor "alleged sufficient facts to show that
21  violations of law are plausible, not merely possible."  Order [Doc. No. 16] at 11:6-10.  In support
22  of this holding, the Court found that Luxor sufficiently alleged that the collective bargaining
23  agreement ("CBA") was valid and provided for arbitration of issues such as the one formally
24  presented to Arbitrator Thomas Christopher in the Yulanda Hodge matter.  *Id.* at 11:11-12.  In
25  relation to arbitration, however, the Court held that "manifest disregard of the law" was a narrow
26  exception to the general principle of deference to arbitration awards.  *Id.* at 11:12-14.  Under the
27  FAA and holdings in *Matthews v. Nat'l Football League Mgmt. Council* and *Comedy Club, Inc.*
28

*v. Improv W. Assocs.,* the Court held that an arbitration award may be vacated where the arbitrator exceeded his power.  Order [Doc. No. 16] at 11:12-16 *citing* Federal Arbitration Act at 9 U.S.C. § 10(a)(4), *Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1115 (9th Cir. 2012) *and Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009).  Further, the Court held that "[v]acatur is appropriate where it is evident that the 'arbitrators exceeded their powers, or so imperfectly executed them that a mutual final and definite award upon the subject matter submitted was not made.'" *Id.* at 11:16-18 *citing Biller v. Toyota Motor Corp.*, 668 F.3d 655, 665 (9th Cir. 2012) *quoting* 9 U.S.C§ 10(a)(4).

Applying the above analysis as to when an arbitration award can be vacated, this Court found that Luxor's Counterclaim was plausible because Luxor alleged that the "Arbitrator's Awards constituted a manifest disregard of the law, a failure to 'draw its essence' from the parties' agreement, and that the Arbitrator 'imperfectly executed his powers in that a mutual, final, and definite award upon the subject matter submitted was not made.'" *Id.* at 11:19-23.  This framework to vacate an arbitration award is the basis of Luxor's Counterclaim and the Union has cited no authority contrary to this well-established law.  Instead, the Union has cited law regarding deference to arbitrators and made unsupported, self-serving arguments regarding its interpretation of the Arbitrator's misconduct.  Motion for Judgment on the Pleadings [Doc. No. 18-1] at 8-10 and 16-25.  None of the Union's arguments, however, directly address the clear exception to the general principle of deference to arbitration awards and found in *Matthews* and *Comedy Club, Inc*. or the grounds for vacatur in *Billings*.  688 F.3d at 1115; 553 F.3d at 1290; 668 F.3d at 665.  Therefore, the Union has presented no case law barring a Counterclaim to vacate an arbitration award.

**B.      The Court's Holding Under *Functus Officio*.**

The Court also held that the Union could not prevail on a Rule 12(b)(6) motion to dismiss since the Union did not appear to dispute that the Arbitrator issued an Award in September 2012 that was different in form and content to the Award issued in November 2012.  Order [Doc. No. 16] at 11:24-12:1.  The Court held that Luxor's allegations regarding two different Awards were

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

sufficiently pled to support the claims related to the Arbitrator exceeding the scope of his authority and the doctrine of *functus officio*.

In its Answer, the Union does not dispute that the Arbitrator's Award in September of 2012 ("Award I") was different the Arbitrator's Award in November of 2012 ("Award II"). Instead, the Union, in its Answer to Counterclaim, admits that "the Arbitrator issued an Award on September 14, 2012." Answer to Counterclaim [Doc. No. 17] at 5:¶19. The Union then inexplicably denies that the Arbitrator stated he was "submitting the Award in advance of the Opinion, and the Opinion would be forthcoming in two or three weeks" even though this is clearly stated in the correspondence accompanying Award I. *Id.*; *see also* Counterclaim [Doc. No. 6] at 10:¶19. The Union admits, however, that "the Arbitrator issued his Opinion on November 26, 2012, and that, in so doing, he clarified the Award." Answer to Counterclaim [Doc. No. 17] at 5:¶20.

Nowhere in Award II does the Arbitrator use the word "clarified." Counterclaim [Doc. No. 6] at Exhibit 2. In fact, to confuse matters further, the Arbitrator states in his November Opinion accompanying Award II that "[t]he award was previously made available to the parties on September 14, 2012" even though the November Award II clearly adds further rulings on the Union's payment to the Arbitrator and the Arbitrator's fees. Thus, the Union itself has concocted the notion of a "clarified" Award through its apparent ability to aver facts regarding the mental intent of the Arbitrator. The Union does not, however, dispute the existence of two separate Awards that is the basis for the Court's ruling of a plausible claim under the doctrine of *functus officio*.

C.      **The Union's Answer to Luxor's Counterclaim.**

Now that the Union's Answer has been filed, the closed pleadings only serve to confirm that the Union disputes every material fact of Luxor's allegations regarding the Arbitrator, the arbitration hearing and the Awards. In its Counterclaim, Luxor brought a cause of action to vacate the labor arbitration Awards and to order a new arbitration hearing in the underlying Yulanda Hodge arbitration held on September 20-22, 2011. Counterclaim [Doc. No. 6] at 6:¶¶ 1-

2; 12:¶¶ 1-2.  In support of its Counterclaim, Luxor alleged several material facts about the circumstances supporting its claim to vacate.

For example, in ¶ 4 of its Counterclaim [Doc. No. 6], Luxor alleged:

> 4.    When counsel for the Union was not satisfied by the dates of availability of the new arbitrator, the Union's counsel unilaterally contacted the Arbitrator and they had *ex parte* communication(s).  Counsel for Counter-Claimant expressed to the Union's counsel and the Arbitrator that she felt counsel for the Union had acted inappropriately in his unilateral and *ex parte* communication(s) with the Arbitrator.   Counsel for Counter-Claimant, however, ultimately consented to release the second arbitrator and scheduled a hearing of the matter with the Arbitrator for March 14-16, 2012, so that the parties could proceed with a hearing on the merits.

In response to this Counterclaim allegation, the Union "admit[s] that counsel for Respondent agreed to schedule a hearing with the Arbitrator on March 14-16, 2012, so that the parties could proceed with a hearing on the merits.  The other allegations in paragraph 4 are denied."  Answer [Doc. No. 17] at ¶ 4.  Thus, the Union denies the material factual allegations that the Union's counsel unilaterally contacted the Arbitrator, that the Arbitrator and Union's counsel had *ex parte* communications, and that Luxor's counsel had expressed to the Union's counsel and the Arbitrator that she felt counsel for the Union had acted inappropriately in his unilateral and *ex parte* communication(s) with the Arbitrator.   These disputed material facts all go to the Arbitrator's bias and possible pre-hearing misconduct in support of Luxor's Counterclaim.

Further, in ¶ 6 of its Counterclaim [Doc. No. 6], Luxor alleged:

> 6.    The Arbitrator, here, sought to resolve the dispute in a manner different from the terms upon which he was retained to serve as arbitrator by the parties.  On the first day of hearing, [ ] Arbitrator Christopher stated:
>
> > Now remember this, people, I'm going to be completely open with you. I've been with you people for more than 30 years in Las Vegas cases. When you had Cowell and you had Bowe and you had Davis and all of them.[1]  That's when I was here. I'm going to be open with you.
> >
> > I may decide this case when the evidence is closed. In my mind I may say that the proof has been met, the proof has not been met.  After I hear the Union's case and the

---

[1] The Union's counsel is an associate of Davis, Cowell & Bowe, LLP.

evidence is closed, I may decide this case.

> So I want to make sure – *because if I do, that makes my job easier*. Now, you may not like that or you may like that, but that's irrelevant.   Because *I must decide this case, and I judge the best, fair, due process way of deciding this case, and I may decide this case when the evidence is closed, before argument, because I can file briefs for both sides if I had to at that point.*

In response to this Counterclaim allegation, the Union "admit[s] that the quoted statement appears at pages 194-95 of the transcript of the hearing.   The other allegations in paragraph 6 are denied." Answer [Doc. No. 17] at ¶ 6.   Thus, the Union denies the material factual allegations that the Arbitrator "sought to resolve the dispute in a manner different from the terms upon which he was retained to serve as arbitrator by the parties."[2]   These disputed material facts all go to the Arbitrator's misconduct during the hearing.

Additionally, in ¶ 7 of its Counterclaim [Doc. No. 6], Luxor alleged:

> 7.       The hearing then proceeded in a very irregular manner.   For example:   (1) the Arbitrator allowed counsel for the Union to interject on direct and to conduct cross-examination of the Company's witnesses; (2) the Arbitrator instructed counsel for the Union how to present his case, including how to voir dire a witness; and (3) the Arbitrator made findings of fact before the close of evidence.

In response to this Counterclaim allegation, the Union states "[t]he allegations in paragraph 7 are denied."   Answer [Doc. No. 17] at ¶ 7.   Thus, the Union denies and disputes that Luxor's allegations regarding the Arbitrator's conduct *during* the arbitration hearing.   Specifically, the Union disputes that the Arbitrator (1) allowed the Union's counsel to interject on direct and conduct cross-examination of Counter-Claimant's witnesses; (2) instructed counsel for the Union how to present his case, including how to voir dire a witness; and (3) made findings of fact before the close of evidence.   This outright denial of these allegations go to the core of the fundamental procedure irregularities that Luxor is alleging occurred *during* the arbitration hearing.

---

[2] The Union appears to dispute that the parties expected the Arbitrator to conduct the arbitration hearing in the same manner as he had in the past – with post-hearing briefing and a written opinion and award.   Although it is a matter for further discovery, the Union's denial of this expectation is in direct contradiction to Union counsel's December 2, 2011 email to Luxor counsel prior to the arbitration hearing in which he stated "The Arbitrator will decide this matter based on evidence presented on [sic] the hearing, and on our briefs . . ."

In ¶¶ 8 and 9 of its Counterclaim [Doc. No. 6], Luxor alleged:

> 8.  The hearing concluded with a final, highly irregular and prejudicial act.  At that time, the Arbitrator ordered everyone except counsel out of the hearing room.  Unusually, this included the court reporter, which prevented the parties from having a complete record of what was about to occur.
>
> 9.  The Arbitrator then stated that he intended to rule on the matter immediately.

In response to these Counterclaim allegations, the Union admits that "the Arbitrator requested an off-the-record meeting with counsel at the end of the hearing" but denies the remainder of both ¶¶ 8 and 9.  Answer [Doc. No. 17] at ¶¶ 8 and 9.  In addition, the Union proffers its own lengthy and completely fabricated account of what transpired in the off-the-record meeting in response to ¶ 9. *Id.* at ¶ 9.  The disputed off-the-record meeting goes to the core of Luxor's allegations that the Arbitrator improperly made a final ruling and kept it off-the-record in order to conceal his misconduct.

In ¶¶ 10, 11 and 12 of its Counterclaim [Doc. No. 6], Luxor alleged:

> 10.  Counsel for the Counter-Claimant objected based on its right to argue the case and protested that to proceed otherwise would deny Counter-Claimant due process and a fair hearing.
>
> 11.  The Arbitrator ignored the objection, asserting that he did not have to consider briefs.  He then proceeded to rule in favor of the Union.
>
> 12.  Counsel for the Counter-Claimant continued to object.

In response to these Counterclaim allegations, the Union admits that "Respondent's counsel stated that it wanted to argue the case" but denies the remainder of ¶¶ 10, 11 and 12, again with the Union's own version of what the Arbitrator stated.  Answer [Doc. No. 17] at ¶¶ 10, 11 and 12. Thus, the Union denies and disputes that the Arbitrator ignored Luxor's objections, that the Arbitrator asserted that he did not have to consider briefs and that the Arbitrator proceeded to rule in favor of the Union.

In ¶¶ 13 and 14 of its Counterclaim [Doc. No. 6], Luxor alleged:

> 13.  The Arbitrator, after apparently realizing that by issuing his decision before the parties were given the opportunity to brief the matter and that he had violated the terms upon which the matter had

1
2
3
4

been submitted to him, spent approximately the next hour-and-a-half attempting to back track from his decision and force counsel for Counter-Claimant to agree to file a brief. Counsel for Counter-Claimant would not agree because a decision had already been rendered. Counsel for the Counter-claimant repeatedly asked to have the court reporter present so that a record could be made. The Arbitrator would not agree to go back on the record.

5
6
7
8
9

14.    In fact, the matter did not go back on the record until the court reporter, who had been locked out of the hearing room, was given access by a security officer. Importantly, the court reporter stated at the beginning of the day that she needed to conclude the proceedings by 6:00 p.m. When the court reporter gained access to the hearing room it was approximately 6:30 p.m., and the hearing went back on record. The Arbitrator confirmed on the record that the following had occurred off the record: . . .

10
11
12
13
14
15

In response to these Counterclaim allegations, the Union admits that an off-the record discussion occurred and admits that the Arbitrator made quoted statements from the transcript but denies the remainder of ¶¶ 13 and 14 with an assertion that "the Arbitrator agreed that the parties could submit briefs in the matter." Answer [Doc. No. 17] at ¶¶ 13 and 14. Again, the Union denies and disputes the off-the-record discussion by re-characterizing the Arbitrator's decision that was made without briefs.

16

In ¶ 15 and of its Counterclaim [Doc. No. 6], Luxor alleged:

17
18

15.    Finally, without Counter-Claimant agreeing to file a brief, the Union and the Arbitrator set a briefing schedule for briefs to be submitted by June 1, 2012.

19
20
21
22

In response to this Counterclaim allegation, the Union asserts that "the parties agreed to file post-hearing briefs" and cites to the transcript while denying the remainder of the paragraph. Answer [Doc. No. 17] at ¶ 15. Thus, the Union disputes that the Arbitrator and the Union set a briefing schedule without Luxor's counsel's agreement.

23
24
25
26
27

16.    The hearing once again went off the record, and while everyone present at the hearing was preparing to leave, the Arbitrator raised his hands, gesturing for a hug. Counsel for the Union said something about a group hug. Counsel for Counter-Claimant said she would not participate in a group hug. The Arbitrator then proceeded towards counsel for Counter-Claimant and embraced her in a bear hug and stated "that is what happens when you get an Albanian and Latina in the same room together." The Arbitrator (who is male) did not similarly hug the Union's counsel (who is male).

28

In response to this Counterclaim allegation, the Union asserts that "the Arbitrator raised his hands, gesturing for the parties to approach him for a short conference. The Arbitrator complimented both parties' counsel for their zealous advocacy" and admits that "the Arbitrator and Union's counsel are male" but denies the remainder of the paragraph. Answer [Doc. No. 17] at ¶ 16. Thus, the Union disputes that the Arbitrator gestured for a group hug, that Union counsel stated something about a group hug, that Luxor's counsel refused to participate in a group hug, that the Arbitrator embraced Luxor's counsel in a bear hug and that the Arbitrator stated "that is what happens when you get an Albanian and Latina in the same room together." These denials all go to the continued irregular and improper conduct of the Arbitrator. Further, the Union's denial of the hug and comment in its Answer is directly contradicted by the Union's own admission in its Motion for Judgment on the Pleadings that "[t]he hug and comment appear most likely an attempt by the Arbitrator to dispel the tension that characterized the end of the hearing." Motion [Doc. No. 18-1] at 25.

In addition to these fundamental procedural irregularities, Luxor also alleged the following affirmative defenses as to why the arbitration Awards should be vacated: (1) the arbitration award that the Union seeks to confirm was procured by undue means; (2) there was evident partiality by the Arbitrator; (3) the Arbitrator engaged in misbehavior prejudicing Luxor's rights; (4) the Arbitrator exceeded his scope of authority and imperfectly executed his powers; (5) the arbitration award that the Union seeks to confirm does not draw its essence from the Collective Bargaining Agreement; (5) the Arbitrator impermissibly dispensed his own brand of industrial justice; and (6) the Arbitrator's actions are subject to the doctrine of *functus officio*, as he sought to expand his power and jurisdiction after he rendered Award I. Counterclaim [Doc. No. 6] at 11:¶¶ 27, 28, 29, 30-31, 32, and 33. In its Order, the Court considered the above material facts and the affirmative defenses made by Luxor. Order [Doc. No. 16] at 3:8-4:7.

In addition to the above denials of factual allegations, the Union "denied" Luxor's allegations for vacating the arbitration Awards as legal conclusions to which no response was required. *Id.* at 6-7:¶¶ 27, 28, 29, 30-31, 32, and 33. Thus, the Union disputes nearly the entirety

of Luxor's Counterclaim and alleged facts.  The Union cannot base a Motion for Judgment on the Pleadings on such disputed material facts.  Additionally, these disputed material facts clearly require further discovery as to the Arbitrator's conduct and the Arbitrator's motivations for that conduct.

### D.      The Union's Motion For Judgment On The Pleadings.

The Union's dispute of material facts is also reiterated in the Union's Motion for Judgment on the Pleadings.  In an effort to place its own spin on the Arbitrator's conduct, the Union instead highlights several areas where the parties clearly disagree on material facts.  These examples include the following Union descriptions of the hour and a half off-the-record discussion on the final day of the arbitration hearing:

1.      The Union states:

> At that [off-the-record] meeting, the Arbitrator informed counsel of his preliminary view of the case: he believed the Employer had failed to meet its burden of proof to show just cause for termination but that this tentative conclusion did not necessarily mean he would grant full back pay to the grievant.

Motion [Doc. No. 18-1] at 1.  In its Counterclaim, Luxor disputes that the Arbitrator was informing anyone of a "preliminary view" or "tentative conclusion" and disputes the Union's characterization of the Arbitrator's comments.  In the off-the-record meeting, Luxor asserts that the Arbitrator denied Luxor's opportunity to make summation by brief or otherwise and proceeded to rule on the matter in the off-the-record discussion.

2.      The Union states:

> The Arbitrator stated, however, that he would not make his tentative conclusions final unless both parties had expressly 'waived' their 'right' to file a brief.

Motion [Doc. No. 18-1] at 1.  Again, Luxor disputes that the Arbitrator's off-the-record conclusions were "tentative."  Further, it was the Union counsel who later concocted an explanation for the Arbitrator's previous denial of briefing.

3.      The Union states:

> Counsel for the Employer said she would not waive the Employer's right to file a brief.  Thus, the Arbitrator said he would keep an

1

open mind and reach a final conclusion only after considering the
parties' briefs.

2

Motion [Doc. No. 18-1] at 2.  Luxor disputes this waiver scenario that was later fabricated by

3

Union counsel and the Arbitrator in an effort to cover the Arbitrator's misconduct which even

4

Union counsel realized would affect the legitimacy of any arbitration award.  The issues of

5

considering briefs and waiving briefing was created in collusion by Union counsel and the

6

Arbitrator only after Union counsel and the Arbitrator realized that the Arbitrator's judgment

7

without briefing would threaten the validity of the Arbitrator's decision.

8

Both the Union's Answer and Motion for Judgment on the Pleadings show multiple

9

material facts that would deny any judgment on the pleadings.  The Union should have heeded the

10

Court's suggestion to file a motion for summary judgment as discovery is clearly needed on a

11

multitude of disputed facts.  Therefore, the Union's Motion for Judgment on the Pleadings should

12

be denied in its entirety.

13

### III.   ARGUMENT

14

#### A.   Motion For Judgment On The Pleadings Standard.

15

Rule 12(c) of the Federal Rules of Civil Procedure provides for motions for judgment on

16

the pleadings, "[a]fter the pleadings are closed — but early enough not to delay trial."  Fed. R.

17

Civ. P. 12(c).  In considering a motion for judgment on the pleadings, a court must accept all

18

factual allegations in the complaint as true and construe them in the light most favorable to the

19

non-moving party.  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  "Judgment on the

20

pleadings is properly granted when there is no issue of material fact in dispute, and the moving

21

party is entitled to judgment as a matter of law."  *Id.*

22

Analysis under Rule 12(c) is "substantially identical" to analysis under Rule 12(b)(6)

23

because, under both rules, "a court must determine whether the facts alleged in the complaint,

24

taken as true, entitle the plaintiff to a legal remedy."  *Chavez v. United States*, 683 F.3d 1102,

25

1108 (9th Cir. 2012).  Under Rule 12(b)(6), a court must assess whether the complaint "contain[s]

26

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

27

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

28

570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).   Under *Iqbal*, a claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*   A court can determine if a plausible claim for relief has been stated through "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If, on a motion under Rule 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d).   "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

### B.    This Court Has Already Held That Luxor Brought A Plausible Counterclaim To Vacate The Arbitration Awards.

In its Motion, the Union again improperly argues for confirmation of the arbitration Awards under case law regarding deference to labor arbitration awards.  Motion [Doc. No. 18-1] at 8-12.  This argument is flawed, however, as it does not address the exception to deference to labor arbitration awards cited by this Court under *Matthews* and *Comedy Club, Inc*. or the grounds for vacatur in *Billings*.[3] 688 F.3d at 1115; 553 F.3d at 1290; 668 F.3d at 665; 9 U.S.C§ 10(a)(4).  Under those cases, this Court has held that an exception to the general deference rule is when an arbitrator exceeded his power or imperfectly executed his power so that a mutual final and definite award upon the subject matter submitted was not made.  *Id.*

Here, Luxor has made factual allegations that the Arbitrator both exceeded his power and imperfectly executed his power so that a mutual final and definite award was not made.  Luxor has alleged that the Arbitrator improperly conducted the hearing in several ways and issued two inconsistent Awards.   Therefore, Luxor has properly pled its Counterclaim to vacate the

---

[3] Further, the Union argues that CBAs have been held to be outside the coverage of the Federal Arbitration Act ("FAA").  Motion [Doc. No. 18-1] at 11.  However, this Court has clarified that, without expressly deciding the question, the Ninth Circuit has assumed that the Federal Arbitration Act ("FAA") applies to arbitration of collective bargaining agreements and the Seventh Circuit has expressly held that the FAA may apply to arbitration of CBAs in cases brought pursuant to section 301 of the Labor Management Relations Act ("LMRA").   Order [Doc. No. 16] at 4:14-15.

Arbitration Awards under the exceptions to the general deference to arbitrators.

C.   Under *Functus Officio*, This Court Has Already Held That Luxor Brought A Plausible Counterclaim To Vacate The Arbitration Awards.

As held in this Court's Order, "under the common law doctrine of *functus officio*, an arbitrator may not redetermine an arbitration award."   Order [Doc. No. 16] at 12:1-4 *citing International Bhd. of Teamsters, Local 631 v. Silver State Disposal Serv.*, 109 F.3d 1409, 1411 (9th Cir. 1997).   The Ninth Circuit has explained:

> It is [a] fundamental common law principle that once an arbitrator has made and published a final award his authority is exhausted and he is *functus officio* and can do nothing more in regard to the subject matter of the arbitration. The policy which lies behind this is an unwillingness to permit one who is not a judicial officer and who acts informally and sporadically, to re-examine a final decision which he has already rendered, because of the potential evil of outside communication and unilateral influence which might affect a new conclusion.

*Id. citing McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 733-34 (9th Cir. 1982), *cert. denied*, 459 U.S. 1071, 74 L. Ed. 2d 633, 103 S. Ct. 491 (1982).

In this matter, Luxor has pled sufficient facts to establish that the Arbitrator's Awards should be vacated under the doctrine of *functus officio*.   Luxor has alleged that the Arbitrator's Award I in September of 2012 was different the Arbitrator's Award II in November of 2012.   The Union asserts that the Arbitrator "clarified" Award I through the issuance of Award II.   Answer to Counterclaim [Doc. No. 17] at 5:¶20.   The Union, however, has proffered no record or other evidence of the Arbitrator's intent to clarify.   Even if this was the case, as the Court correctly pointed out, the existence of two different Awards along with Luxor's allegations that the Arbitrator exceeded the scope of his authority and that his actions are the subject of *functus officio* are enough to allow Luxor's Counterclaim to survive a Rule 12(b)(6) motion to dismiss. Therefore, Luxor's claims also survive the Union's Rule 12(c) Motion for Judgment on the Pleadings under substantially identical analysis.

D.   Judgment On The Pleadings Is Not Warranted Because The Union Disputes Material Facts In The Counterclaim.

In its Motion for Judgment on the Pleadings, the Union has applied the Rule 12(c)

standard backwards.  The Union states "[t]he Employer has admitted all of the material factual allegations in the Petition."  Motion [Doc. No. 18-1] at 8.  To move for judgment as to Luxor's Counterclaim, the Union must show that it does not dispute any of the material facts alleged in Luxor's Counterclaim, and not in regards to Luxor's Answer to the Union's claims.  Under Rule 12(c), the factual allegations in the complaint [or Counterclaim] are construed in the light most favorable to the non-moving party.  *Fleming*, 581 F.3d at 925.  Here, the non-moving party is Luxor as the Union is moving to dismiss Luxor's Counterclaim.  Thus, it is the Union's Answer to Counterclaim that dictates whether or not material facts in the Counterclaim are disputed.

As stated above, the Union denies every material factual allegation made in Luxor's Counterclaim in ¶¶ 4, 6-16, 19-20 and 27-33 regarding the Arbitrator's misconduct and hearing irregularities.  Accepting Luxor's allegations regarding the Arbitrator and his conduct as true, there is no question that Luxor has pled sufficient facts to support a claim to vacate the arbitration award.  The Union does not deny that Luxor would have a valid Counterclaim if Luxor's allegations in ¶¶ 4, 6-16, 19-20 and 27-33 were all true.  These allegations are evidence of the Arbitrator's misconduct and would be a basis to vacate the arbitration Awards if the Arbitrator was shown to have exceeded his authority.  Accordingly, Luxor's Counterclaim, when viewed in the light most favorable to Luxor, has facial plausibility that the Arbitrator's Award should be vacated because (1) the Arbitrator manifestly disregarded the law, (2) exceeded his power, or (3) so imperfectly executed his power that a mutual final and definite award upon the subject matter submitted was not made.

Additionally, the Union's Motion for Judgment on the Pleadings reaffirms the disputed material facts in the pleadings.  In its Motion for Judgment on the Pleadings, the Union alleges that in the off-the-record meeting, the Arbitrator was (1) informing counsel of his "preliminary view" of the case and his "tentative conclusion"; (2) had not made his "tentative conclusions" final unless both parties had expressly "waived" their "right" to file a brief; and (3) said he would keep an open mind and reach a final conclusion only after considering the parties' briefs because Luxor's counsel said she would not waive the Employer's right to file a brief.  Motion [Doc. No.

18-1] at 1-2.  These explanations are in complete contradiction to what Luxor has alleged in its Counterclaim in ¶¶ 4, 6-16, 19-20 and 27-33.  Although not a part of the pleadings, these allegations only emphasize that the Union clearly disputes many material facts as to what actually occurred at the arbitration hearing.

At this Motion for Judgment on the Pleadings stage, Luxor is not required to prove its case in chief and is only required to properly plead factual allegations which, when proven, will establish grounds to vacate the labor arbitration awards at issue.  The Union can only dispose of Luxor's Counterclaim if no material facts are in dispute.  As stated above, the Union disputes every material fact that Luxor has alleged.  Therefore, there is no question that the Motion for Judgment on the Pleadings is deficient on its face and should be denied.

### E.  Luxor Has A Valid Counterclaim To Vacate The Arbitration Awards Based On The Arbitrator's Conduct During The Hearing.

In its Order, the Court noted that Luxor alleges that "'[t]he Arbitrator's conduct during the arbitration proceedings of the instant matter was irregular and denied [it] due process and a fair hearing,' that the award 'was procured by undue means,' and that there was 'evident partiality in the Arbitrator.'"  Order [Doc. No. 16] at 3:19-23.  Further, the Court noted that Luxor alleged that "'[t]he Arbitrator did not comply with the Code of Professional Responsibility for Arbitrators of Labor-Management Disputes of the National Academy of Arbitrators (as amended September 2007) (the 'Code').'"  *Id.* at 3:23-25.  Thus, the Court has already evaluated the plausibility of Luxor's allegations relating to the Arbitrator's conduct and procedural errors at the hearing.

The Union confuses the issue by again arguing that "all matters of procedure are for the arbitrator to decide."  Motion [Doc. No. 18-1] at 15 *citing John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 577-79 (1964); *Service Employees, Int'l Union v. St. Vincent Medical Ctr.*, 344 F.3d 977 (9th Cir. 2003); *Sheet Metal Workers Int'l Ass'n Local 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 744-45 (9th Cir. 1985); *and Goss Golden West Sheet Metal, Inc. v. Sheet Metal Workers, Local 104*, 933 F.2d 759, 763-64 (9th Cir. 1991).  The Union misapplies these cases, however, as these cases dealt with pre-hearing processes rather than procedures during the

/ / /

actual arbitration hearing.[4]

As cited in Luxor's prior Response and Opposition to the Union's Motion to Dismiss Counterclaim and to Confirm and Enforce a Labor Arbitration Award,[5] Luxor's claim to vacate Awards due to misconduct *during* the hearing is supported by case law that is on point. In its Opposition, Luxor noted that courts have recognized the deprivation of the right to a fair hearing resulting from procedural errors as a valid basis to vacate labor arbitration awards. *See Teamsters Local 312 v. Matlack, Inc.*, 118 F.3d 985, 995 (3d Cir. 1997) ("[P]rocedural irregularities . . . may also result in such fundamental unfairness as to warrant the vacation of an arbitral award.") (internal citations omitted); *Int'l Brotherhood of Elec. Workers, Local Union 1823 v. WGN of Colorado, Inc.*, 615 F. Supp. 64, 66 (D. Colo. 1985) ("Procedural irregularities, however, may also result in such fundamental unfairness as to warrant the vacation of an arbitral award."); *Murphy Oil USA, Inc. v. United Steelworkers AFL-CIO Local 8363,* 08-3899, 2009 U.S. Dist. LEXIS 19098, at * 9 (E.D. La. March 4, 2009) ("The court's review of the arbitrator's actions is very limited; however, the court has authority to vacate an award if a party has been denied a fundamentally fair hearing.")

---

[4] For instance, *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543(1964), addressed procedural prerequisites to the arbitration grievance process; it did not involve the review of a labor arbitration to determine if improper procedure deprived a party of the right to a fair hearing. In addition, *Service Employees Int'l Union v. St. Vincent Med. Ctr.*, 344 F.3d 977 (9th Cir. 2003), is similarly inapplicable. In that case, the court addressed a motion to compel arbitration, not the appropriateness of the procedures employed by the arbitrator at the hearing. In *Sheet Metal Workers International Asso. Local Union # 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 744 (9th Cir. 1985), the court examined whether an arbitration board's pre-hearing decision to grant a union's request for a continuance to enable a joinder violated a state court injunction. Finally, in *Goss Golden West Sheet Metal, Inc. v. Sheet Metal Workers Int'l Union, Local 104,* 933 F.2d 759, 763 (9th Cir. Cal. 1991), appellant argued that the arbitration board did not have authority to arbitrate the grievances because the union failed to raise the grievances within the requisite time limits established by the collective bargaining agreements. All of these cases apply to pre-hearing procedures and none of these cases apply to misconduct or procedural irregularities during the arbitration hearing as we have here.

[5] To the extent that the Union re-argues the same points and authorities in its previous Motion to Dismiss Counterclaim and to Confirm and Enforce a Labor Arbitration Award, Luxor hereby adopts the points and authorities in Luxor's prior Response and Opposition to the Union's Motion to Dismiss Counterclaim and to Confirm and Enforce a Labor Arbitration Award [Doc. No. 11] on file herein and incorporated by this reference.

The reasoning in *Matlack* is more applicable to the circumstances in this matter.   In *Matlack*, the union filed a grievance letter regarding whether waste water loads originating in Muscatine, Iowa were being diverted away from the Bensalem, Pennsylvania waste water terminal in violation of the CBA.  118 F.3d at 986.  At the arbitration hearing, the company, Matlack, made a timeliness objection regarding the grievance letter and argued that the scope of the grievance should be limited to shipments that originated out of Muscatine, Iowa alone.  118 F. 3d at 988.  After "confusion about the proper scope of a cross-examination," the arbitrator allowed the union to proceed, even though the case would extend beyond the substantive issue of whether waste water loads were originating in Muscatine.  *Id*.  After "more controversy over the scope of the day's hearing," the court found that the arbitrator appeared to have concluded that he would permit broad questioning of the witnesses on all the issues -- procedural and substantive -- in order to create a full factual record, but that he would permit Matlack to address the merits of a substantive Article 50 argument at a later date.  *Id.*  The court held that the "arbitrator made <u>a fundamental procedural error in deciding the merits of the controversy</u> after advising the parties that he would not do so until after he decided the procedural issues and <u>until Matlack had an opportunity to present its case on the merits</u>."  (Emphasis added).  *Id*. at 996.  Further, the court held that the "arbitrator's resolution of the merits of the Union's Article 50 grievance without benefit of Matlack's evidence or argument on the issue severely impeded Matlack's right to notice and opportunity to be heard in such an adversarial proceeding."  *Id.* Accordingly, the court noted that "[t]his is precisely the type of procedural error that 'undermines the validity of the arbitration process,' permits an arbitrator to take remedial measures such as withdrawal, and authorizes a district court to vacate and remand an arbitration award."  *Id*. (quoting Robert A. Gorman, *Labor Law* 602 (1976).

Here, Luxor has properly pled facts which, when proven, will establish that Luxor was denied a fair hearing.  As detailed above, the Arbitrator conducted a hearing that was rife with serious procedural irregularities which deprived Luxor of its right to a fair hearing.  Indeed, the following occurred during the hearing:  (1) the arbitrator allowed counsel for the union to

interrupt Luxor's presentation by allowing him to cross-examine Luxor's witnesses prior to their direct testimony being completed; (2) the arbitrator instructed counsel for the union on how to present his case (*e.g.,* how to *voir dire* a witness); (3) the arbitrator made findings of fact before the close of evidence; and (4) the arbitrator ruled on the merits of the case during an improper, off-the-record conversation at the close of the evidence, over Luxor's objections.  Further, these procedural improprieties run afoul of the Code of Professional Responsibility for Arbitrators of Labor-Management Disputes of the National Academy of Arbitrators (as amended September 2007) (the "Code").  Specifically, the Code requires an arbitrator to "provide a fair and adequate hearing which assures that both parties have sufficient opportunity to present their respective evidence and argument"; "not intrude into a party's presentation so as to prevent that party from putting forward its case fairly and adequately;" and "comply with mutual agreements in respect to the filing or non-filing of post hearing briefs or submissions."  Code at Sections 5 and 6.

The Arbitrator clearly violated the Code.  For instance, with respect to the final ruling, he violated both the Code and the mutual agreement of the parties to submit written briefing prior to rendering a decision on the merits.  Indeed, the Arbitrator immediately recognized his error in issuing his off the record decision before the parties were given the opportunity to brief the matter.  That is precisely why he spent an hour-and-a-half back tracking from his decision and attempting to force Luxor's counsel to file a brief.  Counterclaim [Doc No. 6] at ¶ 14.  His curative "after-the-fact" measure to allow the parties to submit briefs was a sham and a futile exercise because one cannot un-ring a bell.  The Arbitrator had already rendered a decision on the merits and stated repeatedly that a brief was useless to him.  *Id.*  As in *Matlack*, the Arbitrator made a fundamental procedural error in deciding the merits before Luxor had an opportunity to argue its full case on the merits.

The Union's attempt to segment the Arbitrator's improper conduct by attempting to justify each singular occurrence is unavailing.  The Union misses the mark because it is the totality of the Arbitrator's conduct that deprived Luxor of its right to a fair hearing.  Luxor has properly pled

facts which will establish these fundamental procedural irregularities warranting vacatur.[6]  Thus, Luxor has stated a plausible claim for relief and requests that the Court deny the Union's Motion.

### F.       Request for Leave to Amend Pleadings and Conduct Discovery

In the unlikely event that the Court is inclined to grant the Union's Motion, Luxor respectfully requests that the Court permit it to conduct discovery and grant leave to amend its pleadings.  The Ninth Circuit has held that, in general, a court should liberally allow a party to amend its pleading.  *Sonoma County Ass'n of Retired Emples. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013) *citing* Fed. R. Civ. P. 15(a); *see also Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 712 (9th Cir. 2001) ("A district court shall grant leave to amend freely when justice so requires," and "this policy is to be applied with extreme liberality.") (internal quotation marks and citations omitted).  Courts may decline to grant leave to amend only if there is strong evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc." *Sonoma County citing Foman v. Davis*, 371 U.S. 178, 182 (1962).  "[T]he consideration of prejudice to the opposing party carries the greatest weight." *Id. quoting Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Further, the Union has referred to its own representations of what occurred in the arbitration hearing's off-the-record arbitration discussions that is outside what has been pled in

---

[6] Further, in its Counterclaim, Luxor also alleges that the arbitration Awards should be vacated because (1) the Awards were procured by undue means; (2) the Arbitrator exhibited evident partiality; (3) the Arbitrator engaged in prejudicial misbehavior; (4) the Arbitrator exceeded his scope of authority and imperfectly executed his powers; and (5) the Arbitration Awards failed to draw their essence from the CBA's.  *See* Counterclaim [Doc No. 6].  In addition to the arguments contained above, Luxor hereby adopts the points and authorities regarding these reasons for vacatur as set out in Luxor's prior Response and Opposition to the Union's Motion to Dismiss Counterclaim and to Confirm and Enforce a Labor Arbitration Award [Doc. No. 11] on file herein and incorporated by this reference.

Luxor's Counterclaim.    Under Rule 12(d), a court will treat a motion for judgment on the pleadings as a motion for summary judgment under Rule 56 when matters outside the pleadings presented to and not excluded by the court treats.  Fed. R. Civ. P. 12(d).  Under Rule 56(c)(1), a party "asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts or materials in the record . . ."  Under Rule 56(e), if a party fails to support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: give an opportunity to properly support or address the fact . . ."

In this matter, the Arbitrator's misconduct occurred primarily in off-the-record discussions.  The Union's self-serving explanations of the Arbitrator's actions and statement are not properly supported by materials in the record.  Under Rule 56(e), this Court should give Luxor an opportunity to conduct discovery to support the various factual allegations in its Counterclaim, including in particular, ¶¶ 4, 6-16, 19-20 and 27-33.  At a minimum, discovery is necessary concerning the *ex parte* conversation(s) of Union counsel with the Arbitrator and the multiple off-the-record interactions with the Arbitrator during the hearing for which no record exists because of the Arbitrator's unilateral expulsion of the court reporter from the proceedings.

## IV.   **CONCLUSION**

For the reasons stated above, Luxor respectfully requests that the Court deny Plaintiffs' Motion for Judgment on the Pleadings in its entirety.

Dated this __4__ day of March, 2014.

JACKSON LEWIS P.C.

_____
Gary C. Moss, Bar No. 4304
Veronica Arechederra Hall, Bar No. 5855
Montgomery Y. Paek, Bar No. 10176
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada  89169
*Attorneys for Defendant*
*Ramparts, Inc. dba Luxor Hotel-Casino*

JACKSON LEWIS LLP
LAS VEGAS

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Jackson Lewis P.C. and that on this 4 day of March 2014, I caused to be served a true and correct copy of the above and foregoing **DEFENDANT/COUNTER-CLAIMANT'S OPPOSITION TO PLAINTIFFS/ COUNTER-DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** via ECF filing, properly addressed to the following:

Richard G. McCracken, Esq.
Sarah Grossman-Swenson, Esq.
1630 S. Commerce St., Suite A-1
Las Vegas, Nevada 89102
Attorneys for Plaintiffs/Counter-Defendants

An Employee of Jackson Lewis, P.C.

4828-0157-2376, v.  1